**WILLER et al. v. RAILWAY EXP. AGENCY, Inc.**

No. 1170.

Municipal Court of Appeals
District of Columbia.

Argued Dec. 17, 1951.

Decided Jan. 24, 1952.

Ralph R. Sachs, Washington, D. C., for appellants.

John M. Lynham, Washington, D. C. (Arthur P. Drury and John E. Powell, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

This litigation grew out of a series of complicated transactions connected with a sale of three cash registers by a New York firm to defendant William Willer, shipment thereof via plaintiff-carrier, and a suit and recovery by the shipper against the carrier. This suit by the carrier against the purchaser-consignee resulted in summary judgment in favor of plaintiff for a part of its claim, and defendants have appealed. Following are the essential facts as developed in the complaint and two affidavits filed by defendant William Willer in support of his own motion for summary judgement.

William Willer went to New York and bought three registers from Meyer Fish, trading as Aetna Cash Register Company: a cigar register at $250, a drug register at $400, and a soda register at $150, all being guaranteed in writing for one year. At the time of the purchase Willer made a $100 deposit on the total price. About August 29, 1949, Fish shipped the registers c.o.d. through Railway Express Agency, Inc., plaintiff in the present action. The Express Company would not permit an inspection of the registers but demanded payment of the $700 c.o.d. before surrendering the registers. An uncertified check for that amount, made by Rose Willer, was given the carrier-plaintiff payable to the order of the seller, Meyer Fish.

Between the time of delivery and September 12th, payment on the check was stopped and on September 12th Willer redelivered the cigar register to plaintiff-carrier for reshipment to Fish, claiming it was not the cigar register purchased. Fish refused to accept the cigar register and demanded the full $700 due on the purchase price.

Simultaneously with the return of the cigar register, Willer tendered to the carrier two other uncertified checks payable to the seller: one for $400 and one for $50, to cover the cost of the two remaining registers less the deposit already made. Neither of these two checks were ever accepted or cashed by the seller. As soon as he found time to do so, Willer examined the drug register and, finding that it was in such a state of disrepair that it would cost $150 to repair, also stopped payment on the $400 check.

Later Fish brought an action in the Municipal Court of the City of New York against the Railway Express Agency, Inc., and recovered a judgment for $630.75 and an order that the cigar register be returned to Fish. The record in the case before us does not reveal what occurred at the New

York trial, upon what theory the case developed or what defenses the carrier presented. Carrier says that Willer was notified of the New York action and failed to make an appearance or a defense there; but Willer denied that he was notified as to the filing of the New York suit, or the time or place of trial. After the entry of the New York judgment plaintiff paid and satisfied it and returned the register to Fish.

Based on its payment of that judgment the carrier brought the present suit against William Willer and Rose Willer. As to Rose Willer the defense was that she was not a party to the transaction with Fish, and hence was improperly joined as defendant in this suit. William Willer defended on the ground that he was not indebted to plaintiff because he had returned the cigar register, that he was entitled to return the defective drug register, and that the soda register had been paid for in full. He further claimed that the carrier had no legal position to maintain any action against him and that the pleadings furnished no basis for any liability. He filed a motion for summary judgment, two affidavits, and certain exhibits.

The plaintiff also moved for summary judgment, basing its claim on the theory of restitution, i.e., that the defendants were the primary obligors and that as a result of their refusal to participate in the New York suit they became liable over to plaintiff for the amount paid under the judgment in that suit.

The trial court in a written opinion granted plaintiff summary judgment for $400 for the drug register on the theory that it would be unjust enrichment for the defendants to enjoy the drug register and "not reimburse the plaintiff carrier for the cost of their purchase, as determined by the New York Municipal Court." The judge also held defendants liable on the theory that "where a carrier delivers goods to the consignee without collecting the charges and is compelled to pay the consignor the amount that should have been collected, the carrier has a right of action against the consignee for the money so paid. As defendants admit that the *Drug*

*Register* is in their possession and by their motion for summary judgment admit that the plaintiff carrier paid $400.00 for it to the seller, Meyer Fish, in New York, the Court is of the opinion that the plaintiff carrier is entitled to be reimbursed in this amount." Plaintiff's claim for reimbursement as to the other registers was set for trial on the merits.

The rules governing the propriety of granting summary judgment have been carefully spelled out in a number of recent cases, notably Dewey v. Clark, 86 U.S.App. D.C. 137, 180 F.2d 766. See also Bowles v. Marsh, D.C. Mun.App., 82 A.2d 135; Milstead v. W. P. Ballard & Co., D.C. Mun.App., 76 A.2d 589; Rosenberg v. Itchcovitz, D.C. Mun.App., 72 A.2d 466. We need not here repeat the tests to be applied. But we are satisfied that it was error to grant summary judgment on the state of the case as it was presented to the trial court. Several important issues were in such a state of doubt or conflict that no adjudication could properly be made thereon without taking testimony. First (chronologically at least). was the question as to what notice Willer had of the pendency of the New York suit. Plaintiff alleged that it notified defendants of the institution of the suit in New York, and that during the course of the trial they were personally notified thereof by the trial judge. But an affidavit by Willer emphatically stated that no such notice was given, and that the only notice he ever had was by a phone call from New York in which an unidentified voice said. "There's going to be a suit about those registers," and then terminated the conversation without revealing any further information as to time or place of suit or trial.

Along the same line, plaintiff alleged that Willer refused to settle his dispute with Fish; but Willer swore that he was at all times ready to settle the dispute, and produced a registered letter written by his attorney to Fish (with copy to the carrier) outlining a proposed basis of settlement, which letter was refused by Fish.

Next, we cannot determine from the pleadings on what theory the New York

case proceeded, whether defenses available to Willer would have been relevant to the case as it was tried, or what was the effect of the judgment Fish obtained against the carrier. These questions are important because the carrier's liability to a shipper may be independent of any claims between shipper and consignee. It seems to be well-settled that a carrier's obligation to the shipper in a c.o.d. transaction is a matter of private contract between the parties. Barnhart v. Henderson, 147 Neb. 689, 24 N.W.2d 854, rehearing denied 147 Neb. 982, 24 N.W.2d 854; Okin v. Railway Express Agency, 24 N.J.Misc. 8, 44 A.2d 896; Anthony v. American Express Co., 188 N.C. 407, 124 S.E. 753, 36 A.L.R. 460; Am.Jur., Carriers, Section 648. The carrier under such contracts is generally regarded not only as a bailee to transport the goods but also as agent to collect the price or charge for the seller, Joseph Mogul Inc., v. C. Lewis Lavine, 247 N.Y. 20, 159 N.E. 708, 57 A.L.R. 934; Barnhart v. Henderson, supra; Justin v. Delta Motor Line, La.App., 43 So.2d 53; Bond Rubber Corporation v. Oates Bros., 136 Conn. 248, 70 A.2d 115, or produce the goods for the seller. S. B. Penick & Co. v. Triple "M" Transp. Co., 131 N.J.L. 114, 34 A.2d 898. Also see Anthony v. American Express Co., 188 N.C. 407, 124 S.E. 753, 36 A.L.R. 464; Joseph Mogul, Inc., v. C. Lewis Lavine, 247 N.Y. 20, 159 N.E. 708, 57 A.L.R. 937. As Cardozo, C. J., said in Mogul v. Lavine, supra [247 N.Y. 20, 159 N.E. 709]:

"For breach of its duty to act as agent for the shipper in the collection of the price, it is liable, like any other collection agent, for whatever could have been collected if the duty had been fulfilled. * * *

"The law is settled that, in the absence of agreement or custom to the contrary, an agent to collect may accept money and nothing else. * * *" [When it took something else] "It took the risk and lost." It by no means follows that the carrier can always transfer that loss to the consignee.

Here the carrier accepted uncertified checks (on which payment was later stopped). If the theory of the case in New York was that the carrier thereby breached

a duty, it is at least doubtful whether Willer's defense of breach of warranty would have been available to the carrier. See Okin v. Railway Express Agency, supra.

We think it is important that these matters be developed for other reasons. There is nothing to show that the effect of the New York judgment was to render the carrier a "purchaser" of the goods, as the trial judge has called it. (If so why was the register ordered returned to Fish?) Nor does the record show that there has been an assignment of the seller's claim by operation of the judgment or independently thereof. Indeed the carrier has made no such claim. For these and other reasons it is difficult to understand from the pleadings, without resorting to speculation, on what theory it was claimed that Willer had become obligated to the carrier.

■ ▇ We do not say that the plaintiff-carrier cannot under any circumstances recover from defendant-buyer. Under similar facts some courts have held that a carrier does have a cause of action. Truck Owners Freight Co. v. Poland, 143 Neb. 634, 10 N.W.2d 473; George v. American Ry. Express Co., 20 Ala.App. 266, 101 So. 507. But we cannot approve a summary judgment under a restitution theory based purely on the idea that, "We paid out $630.75 to the seller, so now you pay us." We are cited to no cases in support of such a view; nor have we found any.

The trial judge has cited Sections 76 and 78 of the Restatement of Restitution. But under those sections it seems necessary to show by evidence that the buyer is in fact the *primary obligor* of the amount of money the carrier paid out and for which it seeks reimbursement. Under the Restatement a plaintiff suing over must also show that he made a "reasonable defense" to the suit against him, or that the primary obligor himself was given an opportunity to defend. Here again we encounter a sharp factual dispute, mentioned above, which can only be resolved by taking testimony.

Nor does the record support the unjust enrichment theory. The buyer emphatically denied that the drug register will ever

enrich him in the amount of $400. He alleged affirmatively that to be of any value it would need $150 worth of repairs. There was no showing that this defense of his has ever been· adjudicated, or even considered.

Inasmuch as the case must be fully tried as to the transactions involving all three registers, evidence should also be taken to determine Rose Willer's status: whether she was a partner or part owner as stated in the caption of plaintiff's complaint, or a mere volunteer who tendered her checks to accommodate her husband, or a complete stranger to the transactions.

Reversed.