NATIONAL VAN LINES, INC.,
Appellant,

v.

RICH PLAN CORPORATION, Appellee.

No. 23900.

United States Court of Appeals
Fifth Circuit.

Nov. 17, 1967.

Ralph W. Currie, Dallas, Tex., for appellant.

Paul H. Stanford, Dallas, Tex., for appellee.

Before GEWIN, THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

This appeal is from a judgment of the United States District Court for the Northern District of Texas holding National, a common carrier, liable on a counterclaim for the value of the goods consigned to it by Rich Plan.

On August 10, 1963, Appellee Rich Plan delivered twelve refrigeration units to Appellant National at Nashville, Tennessee for immediate transportation. The contract of carriage was evidenced by appellant's bill of lading No. 110892 (R. 9, Exhibit No. 2–A). The units were consigned to A. J. Farrell in Clairton, Pennsylvania. The contract of carriage was C.O.D. (collect on delivery) and required collection of the purchase price of the units ($1,380), the freight charges ($276), and the C.O.D. service charge ($4.49) at the time of delivery. The shipment was tendered to Farrell on August 16, 1963. At that time, Farrell executed and delivered a company check to appellant's driver, the bill of lading was marked "Paid" and signed by Farrell in a space labeled "Consignee's Acknowledgment of Delivery" (Exhibit No. 2–A), and the goods were placed in Farrell's possession. The following day, before the check was cashed, the consignee informed appellant that payment had been stopped because the value of the goods had been misrepresented. Appellant repossessed the goods and informed appellee of Farrell's contention. Appellee, however, refused to alter the selling price of $1,380. Subsequently, appellant shipped the goods back to Nashville and tendered them to appellee. Appellee refused them and they were then placed in storage by appellant where they still remain.

Appellant brought suit to collect freight and storage charges. Appellee counterclaimed, seeking recovery for the contract price of the units. The parties entered into a pretrial stipulation and the case was decided by the court without a jury and without oral argument. Findings of fact and conclusions of law were filed on June 2, 1966, and judgment was entered June 17, 1966, al-

lowing appellee full recovery on its counterclaim.

■ The question presented is stipulated by the parties:

Whether, under the facts here present, the act of the plaintiff, in accepting the check (Exhibit 3) which it did accept, and relinquishing possession of the property to the extent it did, constituted such a violation of the tariff and contract of carriage as to make plaintiff liable to the defendant for the amount of the C.O.D. charges. If so defendant is entitled to recover on its counterclaim. If not, plaintiff is entitled to recover its freight and storage charges. (R. 14)

Its resolution depends upon the duties imposed on the common carrier by a C.O.D. shipment. The C.O.D. shipment is not the ordinary contract of carriage and the duties of the carrier are thus different from its usual contractual arrangement. The carrier under a C.O.D. contract has a dual function: As bailee to transport the goods, and as the consignor's agent to collect the price from the consignee. There is no common-law duty to act as collection agent and the C.O.D. obligation is a special service which is without the scope of the carrier's public services. See Young v. Santa Fe Trail Transportation Co., 179 Kan. 678, 298 P.2d 235 (1956). Therefore, the duty must be created by the contract. Justin v. Delta Motor Line, 43 So.2d 53 (Ct.App.La.1940); Mogul, Inc. v. C. Lewis Lavine, Inc., 247 N.Y. 20, 159 N.E. 708, 57 A.L.R. 934 (1928); Herrin Transportation Co. v. Robert E. Olson Co., 325 S.W.2d 826 (Tex.Civ.App.—San Antonio 1959, no writ). The present contract clearly created this duty:

The carrier will not deliver or relinquish possession of any property transported by it until all tariff rates and charges thereon have been paid in cash, money order (other than a personal money order), traveler's check, cashier's check, bank treasurer's check or certified check, except where other satisfactory arrangements have been made between the carrier, consignor or consignee in accordance with rules and regulations of the Interstate Commerce Commission. Rule 18(a) of the Carrier's Tariff.

It has also been stated that the carrier is bound to strict compliance with this obligation, see *Justin,* supra, and that personal checks are accepted at the carrier's own risk. Chaning v. Riddle Aviation Co., 203 Misc. 844, 119 N.Y.S.2d 552 (1953). Breach of this contractual duty can render the carrier liable for whatever could have been collected if the duty had been performed. See *Justin,* supra; *Mogul,* supra; *Herrin,* supra. Here, that amount is the $1,380 damages assessed by the trial court.

■ Appellant has attempted to avoid the application of that rule by relying on Strickland Transport Co. v. American Distributing Co., 5th Cir. 1952, 198 F.2d 546, 548. In *Strickland* the carrier permitted an unauthorized inspection of the goods, but the Court held that there had not been such a delivery or conversion as to make the carrier liable for their value. Id. at 549. Appellant first reasons that the relinquishment of possession of the units was merely a conditional delivery based upon the representation that the check could be converted into cash upon presentation at the bank on which it was drawn. This assertion defies reality: The carrier had given up possession of the goods and accepted payment; the goods were left in the consignee's possession overnight; and the bill of lading was marked "Paid" and signed by Farrell in a space labeled "Consignee's Acknowledgment of Delivery." Thus, unlike the situation in *Strickland,* there had been a delivery. The decisions are uniform that once there is delivery without collection of the price, the carrier can be liable for the amount which he was to have collected. Indeed, the unauthorized inspection cases which *Strickland* represents are quite beside the point. *Strickland* is not a C.O.D.-delivery-problem case, and the rules announced there have nothing to do with the well settled line of decisions holding

the carrier liable for the price of the goods.

Nor can the appellant escape liability by arguing that the acceptance of the personal check constituted an "other satisfactory arrangement" between the consignor and the carrier, as provided by Rule 18(a) of the tariff. Since the purpose of the requirement of payment in a form other than a personal check is for the protection of the consignor, this provision for "other satisfactory arrangements" can only apply to arrangements made before the carrier transports the goods. It is not an on-the-spot-escape hatch by which the carrier can alter his contract of carriage. Finally, appellant asserts that it was the stop-payment order which caused the loss, not appellant's conduct, and therefore that it should not be liable for the price of the goods. This argument cannot excuse the carrier from liability since it was this very event which the tariff sought to prohibit. Consequently, all of the carrier's conduct violates the policy of C.O.D. shipments: To assure that the carrier cannot make an absolute delivery without collecting, thereby leaving the shipper to his recourse against the consignee. Okin v. Railway Express Agency, 24 N.J. Misc. 8, 44 A.2d 896 (1945).

The only remaining issue is whether the price of the goods was the correct measure of damages. As stated, the carrier can be liable for the amount which could have been collected had the contract been fulfilled. The cause of action is one for damages and not for a debt, however, and the damages must be measured by the amount of loss which the consignor actually suffered by the breach. See *Mogul* and *Herrin*, supra. Once the consignor has shown that the goods were delivered and that the carrier failed to collect, a prima facie case is established that the amount to be collected is the correct measure of damages. See *Justin*, supra. At this point the burden shifts to the carrier to negate its liability. Exactly what the carrier may prove to thwart the consignor's recovery is unclear. Some courts seem to hold that the only element of mitigation the carrier can establish is that it was not reasonably probable that the price could have been collected even if the carrier had fulfilled his contract. Barnhart v. Henderson, 147 Neb. 689, 24 N.W.2d 854 (Neb.1947). Additionally, other courts characterize the breach as a conversion at the time of delivery and allow no mitigation. See Blaisdell v. American Ry. Express Co., 56 N.D. 870, 220 N.W. 634 (1928); The Restatement of Agency § 402(h), but cf., Pere Marquette Ry. Co. v. J. F. French & Co., 254 U.S. 538, 41 S. Ct. 195, 65 L.Ed. 391 (1921). It would seem, however, that since the carrier's obligation is contractual, the general rules of mitigation of damages should apply so that the carrier could demonstrate that the seller had in fact suffered no loss. Cf. Industrial Sugars, Inc. v. Standard Accident Ins. Co., 7th Cir. 1964, 338 F.2d 673. This general application of mitigation principles is justified by the majority rule which seems to measure damages by actual loss. See Alice v. Taca International Airlines, 134 So.2d 922, 923 (Ct.App.La.1961); *Justin*, supra; *Mogul*, supra; *Herrin*, supra. This factor would be relevant here since the carrier tendered the goods back to the consignor. The decisions indicate that the seller must resell the goods when he has an opportunity to sell them for the same price he expected to receive from the first sale. Bryant v. Pennington, 346 S.W.2d 367 (Tex.Civ.App.)—Amarillo 1961, no writ).

The record in the instant appeal does not permit a resolution of this issue. The question stipulated by the parties is couched in "either/or" language—that is, either the carrier gets his freight and storage charges or the consignor gets the $1,380. There was no attempt by the carrier to mitigate the damages by showing the present market value of the goods or the availability of other buyers. The decisions are clear that if only delivery and failure to collect the C.O.D. amount are shown, the damages will be assessed on that basis since it is the carrier's burden to rebut the consignor's prima facie

case. See *Justin,* supra. This carrier has simply stipulated itself out of court.

We have carefully considered the other arguments raised by appellant and find them without merit. Therefore, the judgment of the lower court is

Affirmed.