PRECIPITAIR POLLUTION CONTROL, et al., Appellants,

v.

Roy W. GREEN, et al., Appellees.

No. 1425.

Court of Appeals of Texas, Tyler.

Dec. 31, 1981.

Rehearing Denied Jan. 28, 1982.

Mike A. Hatchell, Tyler, for appellants.

Joe R. Green, Longview, for appellees.

SUMMERS, Chief Justice.

This is a suit seeking damages resulting from the breach of three leases. Two of the leases involved were on warehouse space, and the third lease covered office

space.[1] The owners and lessors of the property were plaintiffs, Roy W. Green and his son, Roy Wesley Green, Jr. (Wes). The lessee of the warehouse and office space was the defendant, Advance Ross.[2]

Trial was had to the court below without the aid of a jury. The trial court found that the office lease was valid; that the term of the lease expired in 1985; and that Advance Ross was in default in the payment of rent. The trial court further found that the warehouse leases were voidable; that Advance Ross was still "in possession" of the property; that the defendant was in default in the payment of rent; and that it would continue to owe rent as long as it continued to hold possession of the premises. Based on these findings, judgment was entered for the Greens. Advance Ross appeals.

We affirm.

At the time the leases were entered into, the chief operating officer for Advance Ross in Texas was either Roy or Wes Green.[3] The leases on the warehouse were signed on behalf of Advance Ross by Wes Green as president of the company. Roy Green signed as lessor. The office lease was signed on behalf of Advance Ross by Harvey Campbell, a vice-president of the parent company in Chicago. Both Roy and Wes Green signed as lessors.

During the terms of the leases, a dispute arose between the Greens and the company officials in Chicago. Presumedly based on this dispute, the Greens resigned their positions with the company in late 1978, and the Advance Ross group alleges that they moved out of the Greens' property in early January, 1979. The Greens claimed the terms of the leases did not expire until 1985 and filed suit for past due rent, as well as all future rent based on the theory of anticipatory breach.

Advance Ross' defenses and counterclaims on the warehouse leases consisted of averments that the leases were not binding, were voidable and should be cancelled because Wes Green breached his duty of loyalty to the defendant Advance Ross. That is, Wes Green was president of the corporation/lessee, and, at the same time, owned the leased property. Advance Ross further claimed it was unaware of the warehouse leases until a year after the leases allegedly became effective.

As to the office lease, Advance Ross asserted it was not bound by the terms of the lease because (1) the lease was the result of mutual mistake, and (2) the Greens' acceptance of the offer to enter into such lease was never communicated to Advance Ross in Chicago.

Before reaching a determination of appellant's points, we will first respond to the Greens' contention concerning the trial court's findings. The Greens point out that findings of fact and conclusions of law were not requested nor filed. They contend that in such a case the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence.

■ In the case at bar, however, the trial court's judgment contains specific recitals of facts, and the court rendered judgment based upon such findings. Although Rule 296, Texas Rules of Civil Procedure, authorizes the trial court to file conclusions of fact and law at the request of either party, this practice is not mandatory. However, when the findings are contained in the judgment, they shall be treated as findings of fact filed in accordance with Rule 296.

1. Three separate suits were filed, one for each lease. The cases were consolidated for trial and appellate purposes.

2. Actually one lease was between the Greens and Precipitair Pollution Control which is a division of Advance Ross Electronics Corp. One lease was with Advance Ross Steel Co., and the third lease was with Advance Ross Electronics. All of these Texas-based companies were wholly-owned by Advance Ross Corp., headquartered in Chicago. To simplify this opinion, we will refer to all three companies as "Advance Ross."

3. Roy Green served as President of Advance Ross in Texas until 1976 when he was succeeded by Wes Green. Roy continued with the company as a consultant after 1976.

*Peterson v. Peterson*, 595 S.W.2d 889, 891 (Tex.Civ.App.—Austin 1980, writ ref'd n. r. e.); *Cottle v. Knapper*, 571 S.W.2d 59, 64 (Tex.Civ.App.—Tyler 1978, no writ).

■ Under its first point, Advance Ross claims that it yielded possession of the warehouse space in January of 1979. The trial court found that as of the date of the judgment, April 4, 1980, Advance Ross was still in possession of said space. Point of error one assails this finding as "not supported by the record." We have no way of knowing whether appellant is complaining that the evidence to support this finding is legally or factually insufficient. However, since Advance Ross has prayed that this court reverse and render, we shall construe this first point of error as attacking the legal insufficiency of the evidence.

■ In reviewing legal insufficiency points of error, or "no evidence" points, the courts of appeal will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

The evidence supporting the finding that Advance Ross was still in possession included testimony from Harvey Campbell, a vice-president of defendant, that the locks on the warehouse were changed by Advance Ross prior to its moving out. Wes Green testified that a new tenant moved into the building without permission from either him or his father. He further testified that the new tenant was not paying rent to the plaintiffs and neither was Advance Ross.

When viewed in the most favorable light, the above testimony is some evidence to support the trial court's finding that Advance Ross was still in possession of the warehouse. Appellant's first point is overruled.

Appellants' next point of error reads: Because the 1985 office lease was the result of mutual mistake, the judgment of the trial court that the 1985 lease is valid should be reversed.

■ We interpret this point as an attack upon the trial court's finding that the 1985 office lease was not the result of mutual mistake. Appellant seems to be arguing, in other words, that it established mutual mistake as a matter of law. In reviewing "matter of law" points, this court must consider all of the evidence in the record, and if the converse of the finding is established conclusively, the point will be sustained. O'Connor, Appealing Jury Findings, 37 Tex.B.J. 839 (1974); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960).

■ Advance Ross asserts and its vice-president testified that there was a mistake as to the term of the office lease. It introduced at trial a copy of a fully-executed lease on the office space which showed the term expiring in 1980. The Greens produced a copy of another version of the lease, dated a month later, and again fully executed, which showed the expiration date of 1985. Neither plaintiffs nor defendant could explain the circumstances by which the two leases for the same property were signed. Harvey Campbell, defendant's vice-president, testified that his signature appears on both leases as lessor. He could not recall, however, why he had signed both leases. He further testified that the 1980 lease was the only one he had in his possession; and that he was not aware the 1985 lease existed until after the Greens left the employment of Advance Ross in late 1978.

Wes Green, on the other hand, testified he sent a copy of the 1985 lease to Chicago; and that he had discussed the long-term lease with Harvey Campbell after first trying to sell the building to Advance Ross. Like Mr. Campbell, Wes Green could not recall the reasons or circumstances for executing both leases.

After reviewing all the evidence, we do not find that Advance Ross established as a matter of law that the 1985 lease was the result of a mutual mistake. Appellant's second point is overruled.

Finally, Advance Ross urges us to declare the 1985 office lease invalid because the Greens never communicated their acceptance of the lease to Advance Ross. In order to understand this argument, we must set out the dates of the transactions between the two parties. First, the 1985 lease, which was undisputedly prepared by the Greens, was dated April 17, 1975. It was signed by Harvey Campbell on behalf of the lessee, Advance Ross, on April 18, 1975. On April 24, 1975, the Greens signed as lessors. From this evidence, Advance Ross argues that it made the offer to enter into a lease agreement when it signed the lease, and that the Greens accepted the offer when they signed the lease six days later. However, Advance Ross claims that this acceptance was never communicated back to the company, and, therefore, the 1985 lease is invalid.

The Greens, in response, argue that they made the offer when they sent the lease to Harvey Campbell in Chicago; that when Campbell signed the lease, he accepted the lease and bound Advance Ross to its terms.

As pointed out earlier, neither side has any recollection of the facts or circumstances surrounding the execution of the 1985 office lease nor of the 1980 lease.[4] Nevertheless, the trial court made an implied finding that the offer came first from the Greens and that Advance Ross accepted the lease terms of the 1985 lease. We construe Advance Ross' third point of error to be a "no evidence" attack on this implied finding. Finding some evidence in the record to support the finding, we overrule appellant's third point.

Finding no error in the actions of the trial court, we affirm the judgment.

---

4. The 1980 lease was signed first by the Greens on March 14, 1975, and then executed by Harvey Campbell on April 18, 1975—the same day he signed the 1985 lease.