**SWEST, INC., Appellant,**

v.

**AMERICAN AIRLINES, INC., Appellee.**

**No. 05–83–00279–CV.**

Court of Appeals of Texas,
Dallas.

May 16, 1985.

Rehearing Denied June 25, 1985.

Arch M. Skelton and Thomas W. McKenzie, Besing, Murphy & Skelton, Dallas, for appellant.

Royal H. Brin, Jr., Kevin H. Good, David A. Schwarte, American Airlines, Inc., Dallas, for appellee.

Before STEPHENS, VANCE and ALLEN, JJ.

ALLEN, Justice.

Appellant, Swest, Inc., appeals from a judgment entered against it and in favor of appellee, American Airlines, Inc. (American), in a suit brought by Swest against American for breach of contract based on American's failure to collect C.O.D. charges on two jewelry shipments. Swest raises fourteen points of error on appeal. Points one through eight basically contend that the trial court erred in entering judgment for American because Swest proved breach of contract by American for both C.O.D. shipments as a matter of law. The other points of error complain of the charge, certain evidentiary rulings, and the

trial court's award of attorney's fees to American. American asserts three cross-points concerning the trial court's refusal to submit a special issue on ratification, the alleged insufficiency and impropriety of Swest's proof of damages, and the trial court's action in striking American's counterclaim for a declaratory judgment. We agree with Swest's points of error three and seven, which contend, in essence, that American breached its contract as a matter of law. Consequently, we reverse and render judgment in part in favor of Swest and remand in part for a determination of attorneys' fees, if any, due Swest.

Swest, a jewelry supply house based in Dallas, sent a number of gold and silver shipments C.O.D. to New York on appellee American, a common carrier, to a person identifying himself as Scott Barter. There were no problems with the first two shipments, which were for relatively small amounts, with delivery accomplished and payment made by cashier's check and certified personal check. The last two shipments, also sent C.O.D., were priced on the airbill at $48,220 and $38,160, respectively. American accepted payment by what appeared to be certified personal checks, but actually the bank certifications were forged. American turned over the $48,220 shipment to Barter on November 11, 1980 and turned over the $38,160 shipment to Barter on November 12, 1980. In both instances, American turned the merchandise over to Barter around midnight, when the banks were closed, and made no attempt to verify the forged certified checks. The checks were subsequently dishonored, resulting in Swest's suit against American for the value of the merchandise, in which Swest alleged breach of contract, fraud, negligence, breach of duty of good faith and fair dealing, and breach of duty to comply with reasonable commercial standards. The cause was tried before a jury, which found that American did not breach its C.O.D. contracts with Swest. The trial court accordingly entered judgment for American.

■ Although Swest raises fourteen points of error, we conclude that points of error three and seven are dispositive of the case. Swest complains in these points of error that the trial court erred in overruling its motion for judgment notwithstanding the verdict because the jury's findings of no breach of contract were against the great weight and preponderance of the evidence. Although these points of error use "factual insufficiency" language, the language used to characterize a point of error is not controlling. Instead, the procedural steps to which the points relate are determinative. *McKinney v. Air Venture Corp.*, 578 S.W.2d 849, 862 (Tex.Civ.App.— Fort Worth 1979, writ ref'd n.r.e.). Thus, since Swest's points of error three and seven complaint of the trial court's refusal to grant Swest a judgment notwithstanding the verdict, we construe them to be legal insufficiency points. *Murray Corp. of Maryland v. Brooks*, 600 S.W.2d 897, 903 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r. e.); *Flesher Construction Co., Inc. v. Hauerwas*, 491 S.W.2d 202, 205–07 (Tex.Civ. App.—Dallas 1973, no writ); *see also, McDonald v. New York Central Mutual Fire Insurance Co.*, 380 S.W.2d 545, 548 (Tex. 1964). We therefore construe them to be asserting that the jury findings of no breach of contract are erroneous as a matter of law. In other words, Swest by these points of error contends that it established breach of contract as a matter of law. In reviewing "matter of law" points, we must consider all the evidence in the record. *Bobbitt v. Electronic Data Systems Corp.*, 652 S.W.2d 620, 622 (Tex.App.—Dallas 1983, no writ); *Precipitair Pollution Control v. Green*, 626 S.W.2d 909, 911 (Tex. App.—Tyler 1981, writ ref'd n.r.e.).

■ It is undisputed that American made no attempt to verify the purported certified checks in question. The issue to be resolved, then, is whether American was required to make sure that the purported certified checks were genuine and not forgeries. This is a question of first impression in Texas. The only authority we have found from any jurisdiction which rules directly on the question of whether a

C.O.D. carrier has a duty to verify a certified check is *Mogul v. Lavine*, 247 N.Y. 20, 159 N.E. 708, 709 (1928) (Cardozo, C.J.). *Mogul* is a leading case, perhaps *the* leading case, on the duties and liabilities of C.O.D. carriers. A Texas court has quoted with approval *Mogul's* basic analysis of those duties and liabilities. *Herrin Transportation Co. v. Robert E. Olson Co.*, 325 S.W.2d 826, 827–28 (Tex.Civ.App.—San Antonio 1959, no writ). *Mogul* holds that a C.O.D. carrier which may accept a certified check under its C.O.D. contract has a duty to verify any purported certified check tendered as payment for a C.O.D. shipment. We concur. As Chief Judge Cardozo stated in *Mogul*, a C.O.D. contract which allows payment by a certified check allows the carrier to accept a certified check, "and not a mere pretense of one." 159 N.E. at 709.

◼ Moreover, holding that a C.O.D. carrier does not have the duty to verify a purported certified check would undermine the policy and purpose of C.O.D. shipments. The policy is to "assure that the carrier cannot make an absolute delivery without collecting, thereby leaving the shipper to his recourse against the consignee." *National Van Lines, Inc. v. Rich Plan Corp.*, 385 F.2d 800, 803 (5th Cir. 1967). The Ninth Circuit Court of Appeals, in *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1379 (9th Cir.1978), stated the purpose behind the policy as follows: "The seller generally utilizes a C.O.D. contract because he either does not trust the buyer or does not intend to advance credit ... [W]hen utilizing the C.O.D. method the seller clearly indicates he wants liquid assets, not a contract claim against a distant buyer who may be insolvent, litigious, dishonest, or all three." If we were to hold that a C.O.D. carrier need not verify purported certified checks, we would significantly undermine the confidence of shippers that they would receive cash or its equivalent in payment for their C.O.D. shipments. This we decline to do. Hence, we sustain Swest's points of error asserting that the trial court erred in refusing to grant Swest a judgment notwithstanding

the verdict. We hold that the evidence establishes as a matter of law that American breached its contractual duty to verify the checks.

◼ Our holding does *not*, as the dissent maintains, impose strict liability on C.O.D. carriers for failure to collect, even when the failure is the result of the carrier's acceptance of a forged certified check. If a C.O.D. carrier, in the exercise of reasonable care and skill, fulfills its duty to verify a purported certified check (when the C.O.D. contract allows payment by certified check), it is not liable for loss. The evidence in this case shows that American made no effort whatsoever to fulfill its duty. Therefore, as a matter of law, it breached its contractual duty to collect the amounts due.

◼ The dissent argues that *The Video Station v. Frey's Motor Express, Inc.*, 188 N.J.Super. 494, 457 A.2d 1217, 1220 imposes a lesser duty on C.O.D. carriers. *The Video Station* does hold that "[a] defendant which is in the business of accepting C.O.D. shipments for delivery should reasonably be required to educate its agents and employees as to the identifying characteristics of a certified check." *Id.* 457 A.2d at 1220. The dissent seems to take this holding to mean that a C.O.D. carrier *only* has the duty to inspect a certified check to see if it is void on its face. However, *The Video Station* did not reach the question of whether a C.O.D. carrier has the duty to verify a certified check precisely because the check in *The Video Station* was void on its face. There is nothing inconsistent between *The Video Station's* holding that a C.O.D. carrier must inspect a purported certified check for facial defects and our holding that a C.O.D. carrier must go on to verify those purported certified checks which pass this inspection.

◼ Our decision on points of error three and seven, which compels a reversal, makes it unnecessary to discuss Swest's remaining complaints. We now turn to American's cross-points. American's first cross-point is that the trial court erred in

refusing to submit a special issue on ratification to the jury. We find no error in the trial court's refusal to submit such a special issue, since there was no evidence that Swest had ratified American's acceptance of purported, but unverified, certified checks. When American delivered the purported certified checks to Swest, Swest did accept and deposit them. This action would count as evidence of Swest's willingness to accept verified, valid certified checks in lieu of cash or cashier's checks. However, there is no evidence that Swest had knowledge that American had accepted purported, but unverified, certified checks. Since there is no evidence that Swest had knowledge of all the material facts surrounding American's acceptance of these bogus checks, American was not entitled to a jury issue on the defensive issue of ratification. *Hernandez v. Southern Pacific Transportation Co.*, 641 S.W.2d 947, 953 (Tex.App.—Corpus Christi 1982, no writ) (no error in trial court's refusal to submit special issue if there is no evidence raising it); *Jackson v. Gray*, 558 S.W.2d 138, 139 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.) (ratification requires knowledge by principal of all pertinent facts); *see also Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980) (ratification may occur after principal acquires full knowledge).

■ American's second cross-point is that the evidence offered by Swest to prove its alleged damages was insufficient and improper under the Texas law of damages. This is not actually a cross-point, since it does not complain of any ruling or action of the trial court. TEX.R.CIV.P. 420; *Jackson v. Ewton*, 411 S.W.2d 715, 717 (Tex. 1967). It is instead an argument for upholding the trial court's judgment despite any error in the jury's findings on liability. Since the trial court's judgment would be correct if Swest did not prove damages, we shall consider this argument. The sum to be collected on the C.O.D. shipment is *prima facie* evidence of the shipper's damage when the carrier fails to collect. *Herrin Transportation Co.*, 325 S.W.2d at 827; *National Van Lines*, 385 F.2d at 803 (ap-

parently applying Texas law), *Mogul*; 159 N.E. at 709. Swest offered uncontroverted evidence of the sum to be collected on delivery of the goods. The carrier may mitigate damages, however, if there is sufficient evidence that the debt was uncollectible. *Herrin Transportation Co.*, 325 S.W.2d at 828; *National Van Lines*, 385 F.2d at 803; *Mogul*, 159 N.E. at 709. In such a circumstance, though, the carrier cannot escape liability for all damages. The damage award in such a case must reflect the actual loss to the consignor. That loss is the value of the goods wrongfully surrendered. *Mogul*, 159 N.E. at 710.

■ American argues that it is entitled to mitigation of damages, that damages should consequently be assessed according to the actual value of the goods at the time of delivery, that Swest did not prove the actual value of the goods at delivery, and that Swest, therefore, did not prove damages. However, it is established law in Texas that the defendant has the burden of proof on all matters relating to mitigation of damages. *Stanley Manly Boys Clothes v. Hickey*, 113 Tex. 482, 487–88, 259 S.W. 160, 163 (1924); *Hardison v. Beard*, 430 S.W.2d 53, 57 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.); *see also, Herrin*, 325 S.W.2d at 828; *National Van Lines*, 385 F.2d at 803–04. American therefore had the burden not only to prove the predicate for mitigation, the debt's uncollectibility, but also to prove that the actual value of the goods on delivery was less than the sum to be collected. American has not cited this court to any part of the record which would indicate that the actual value of the goods at delivery was less than the sum to be collected. Indeed, it contends that there was no evidence of the actual value of the goods. Since American had the complete burden on its defensive plea of mitigation and produced no evidence on an essential element of that plea, we must conclude that Swest's *prima facie* proof of damages stands unrebutted. Swest has thus proved as a matter of law that its damages amounted to the sum to be collected on delivery of the goods. *See Lesi-*

*kar v. Lesikar,* 251 S.W.2d 555, 559 (Tex. Civ.App.—Galveston 1952, writ ref'd n.r.e.) (unrebutted *prima facie* case is established as a matter of law).

■■■ American's final cross-point complains that the trial court erred in striking its counterclaim against Swest for a declaratory judgment. A successful party which has some complaint about the judgment must inform the trial court of its complaint or objection before it can assert a cross-point on appeal. Failure to do so deprives the court of appeals of jurisdiction to consider the cross-point. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 9, 336 S.W.2d 609, 610 (1960); *Atlantic Richfield Co. v. Holbein,* 672 S.W.2d 507, 517 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). American's complaint essentially is that the judgment did not include declaratory relief. American did not file a notice of appeal; nor did it in any other way inform the trial court of its dissatisfaction with the judgment. This court consequently has no jurisdiction to consider the third cross-point.

We conclude that Swest established its breach of contract case as a matter of law. We therefore reverse and render judgment that Swest, Inc. recover from American Airlines, Inc. the sum of $86,380.00, the total amount to be collected on the two C.O.D. shipments, plus applicable interest, and that American Airlines, Inc. take nothing from Swest, Inc. Moreover, since Swest pleaded for attorneys' fees under TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1985) and prayed for attorneys' fees in its motion for judgment notwithstanding the verdict, and since the parties agreed that the trial court would decide the issue of attorneys' fees for the prevailing party in a post-verdict hearing, we remand this case to the trial court solely for a determination of the attorneys' fees, if any, due Swest.

Reversed and rendered in part and remanded in part.

VANCE, Justice, dissenting.

I respectfully dissent. The majority holds that the trial court erroneously overruled Swest, Inc.'s (Swest) motion for judgment n.o.v., and that American Airlines, Inc. (American) had an absolute duty under its C.O.D. contract with Swest to verify that the purported certified checks were genuine rather than forgeries. I, however, do not interpret the relevant authorities on this subject to impose such a harsh standard on common carriers such as American. I believe that the relevant authorities require instead that the common carrier merely not act negligently in carrying out its duties as an agent of the shipper.

In points of error one through eight Swest contends that the trial court erred in failing to find a breach of contract by American. Swest first contends that a breach of contract by American was shown because the C.O.D. contract entered into between the parties contemplated that shipments would not be turned over to Barter, the consignee, without full payment of the C.O.D. charges by either *cash* or *cashier's check only.* American argues, however, that whether the C.O.D. contracts contemplated payment by cash or cashier's check only was a disputed fact issue which was resolved adversely by the jury against Swest. I agree. The jury stated, in answers to issues number one and four that Swest did not breach its C.O.D. contract in collecting payment of the C.O.D. charges for the third and fourth shipments. These answers are supported by evidence from an American representative that American had agreed to accept cash, cashier's check, certified check, traveler's checks, or money orders as payment. Thus, since findings of the jury must be upheld if there is *any* evidence of probative value which would support the finding, *State v. Zaruba,* 418 S.W.2d 499 (Tex.1967), even if the appellate court would have decided the issue differently, *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981, no writ), I would hold that the jury properly held that the contract contemplated payment by means which included certified check and that, therefore, American did not breach the agreement by

its acceptance of a certified check from Barter.

Thus, since American could properly accept a certified personal check in payment of the C.O.D. charge, the issue as to whether American was required to make sure the check was genuine and not a forgery must be resolved. The majority correctly notes that this is a case of first impression in Texas. Regarding this issue I must dispute, however, the majority's statement that *Mogul v. Lavine*, 247 N.Y. 20, 159 N.E. 708 (1928), a *1928* New York decision, is the only relevant authority from any jurisdiction on this subject. *Video Station v. Frey's Motor Express, Inc.*, 188 N.J.Super. 494, 457 A.2d 1217 (A.D.1983), deals with a situation virtually identical to the present case. The Supreme Court of New Jersey, Appellate Division, ruled on the issue of whether a carrier breached its duties under the C.O.D. contract by accepting a forged certification on a check. The only discernible difference between the two cases is that in *Video Station* the forgery was easily ascertainable because the requisite signature of an officer of the certifying bank was absent from the *face* of the check, while in the present case, the forgery was not readily discernible on the face of the check.

In *Video Station* the New Jersey court, although it ultimately held that the defendant was liable for accepting the forgery, refused to impose strict liability upon the carrier but instead held it liable for negligence. The court stated that the overwhelming weight of *modern* authority is that a carrier's liability for failure to pick up cash or its equivalent under a C.O.D. shipment is a matter of contract between the parties, separate from and unrelated to the contract for delivery and its attendant statutory duties. 457 A.2d at 1218–19; *See generally*, 13 C.J.S. Carriers, § 186(a) at 382–83; Annot., 27 A.L.R.3d 1320, 1324 (1969).

Furthermore, the court stated that under a C.O.D. shipment, the carrier acts in two capacities, the first capacity being as bailee to receive, transport, care for and deliver the goods, which is a common law duty imposed upon common carriers. There is no question in the present case regarding American's fulfillment of this duty. The second capacity in which the carrier acts as an agent of the shipper to collect the price of the goods is not a common law duty but is a duty based upon a private contract, express or implied, which the carrier may enter into or refuse at its option. *Id.* at 1219. *National Van Lines, Inc. v. Rich Plan Corp.*, 385 F.2d 800 (5th Cir.1967); *Mogul v. Lavine*, 247 N.Y. 20, 159 N.E. 708, 709 (1928). This interpretation is consistent with the definition of C.O.D., which is defined as "collect on delivery." These letters import the carrier's liability to the consignor to collect the cost of the goods from the consignee and, if not collected, to return the goods to the consignor. BLACK'S LAW DICTIONARY 233 (5th ed. 1979). The terms of the contract in *Video Station* were clear and simple: the carrier agreed to release the goods to the consignee *only* upon receipt of cash or a certified check and to remit either the cash or the certified check to the shipper, while the shipper agreed to pay a C.O.D. fee for this service. The court stated that the effect of this contract was to create an agency in the carrier to collect a debt for the shipper. The terms of the contract in the present case, as found by the jury, allowed American to release the goods to Barter, Swest's consignee, upon receipt of cash, cashier's check, certified check, traveler's check, or money order, and to remit the payment to Swest. In return, Swest agreed to pay a C.O.D. fee for this service. The effect of the contract was to create an agency in American to collect a debt for Swest.

The duties involved for such an agent are defined in the Restatement (Second) of Agency, § 426 (1957): "Unless otherwise agreed, an agent employed to collect from others goods or money due the principal has a duty of using *reasonable care* and *skill* in making such collections in accordance with the directions of the principal." (emphasis added). Thus, according to the court in *Video Station:*

"An agent to collect a debt must exercise *ordinary care, skill,* and *diligence* in the performance of all the duties incident to the undertaking, and will be liable to his principal for any loss which his *negligence* in this respect may occasion. If the agent has acted in good faith and with ordinary care, skill, and diligence he will not be liable except in cases where he has guaranteed the collection; nor will he be liable if the principal himself has prevented him from collecting" (emphasis added).

*Video Station,* at 1219 (*citing* 3 C.J.S., Agency, § 304(a) at 90).

Thus, under this standard of care, unless American acted *negligently* in accepting the forged certified check from Barter, American cannot be held liable to Swest for the loss resulting from the forgery. Regarding the determination of whether American acted negligently in the present case, I agree with the court in *Video Station,* that "a defendant which is in the business of accepting C.O.D. shipments for delivery should reasonably be required to educate its agents and employees as to the identifying characteristics of a certified check." *Id.* at 1220. However, in this case, there was nothing apparent on the face of the check to identify the certification as a forgery. There was nothing on the instrument to place Swest, nor anyone else, such as a subsequent holder, on notice of a forgery. *See* TEX.BUS. & COM. CODE ANN. § 3.304 (Vernon 1968). Therefore, I would hold that American was not negligent in accepting the forged certified check from Barter. Thus, since I have already stated that unless the agent either was negligent or by contract guaranteed the collection of the payment, of which there is no evidence, I would hold that American acted properly in carrying out its duties as a C.O.D. carrier, and therefore did not breach its contract with Swest by accepting the forged check.

The majority, along with Swest, relies on *Mogul v. Lavine,* 247 N.Y. 20, 159 N.E. 708 (1928) for the proposition that even if the contract allowed the carrier to accept a certified check, the carrier is still under the duty to verify the genuineness of the instrument before accepting it because "the chance of deceit or forgery was one of the risks of its calling." 159 N.E. at 709. However, I would reject this imposition of strict liability upon C.O.D. carriers in favor of the less stringent negligence standard of care. *Mogul* was written by Justice Cardoza in *1928,* at a time in which the use of common carriers differed greatly from that of the present. Completion of the success of commercial transactions now depends on rapid transit and delivery and the imposition of the stringent strict liability standard upon C.O.D. carriers would have an extremely negative effect on such transactions. A less stringent negligence standard of care is a much more commercially reasonable duty to impose on present day commercial carriers and will sufficiently protect shippers. Thus, I would reject *Mogul* as authority and would agree instead with the court's rationale in the more recent decision in *Video Station.*

I further disagree with the majority's statement that the less stringent negligence standard would undermine the policy and purpose of C.O.D. shipments. While the majority correctly notes that the underlying policy of C.O.D. is to assure that the carrier cannot make an absolute delivery without collecting, *National Van Lines* at 803, when the contract between the shipper and carrier expressly states that the carrier may accept cash, cashier's check, certified check, traveler's check or money order as payment, as the jury in this case held that it did, and which fact the majority does not dispute, the mere fact that the shipment is C.O.D. does not require the carrier to act as an absolute guarantor or insurer of the payment if it accepts and "collects" the payment in a form approved under the contract. Common carriers would clearly be unwilling to accept this role. A C.O.D. contract merely requires the shipper to act reasonably and without negligence and "*collect* on delivery," not obtain "cash on delivery." This American did. If the shipper wishes to insure that it receive cash payment, the contract between the shipper

and carrier can so provide that cash is the only acceptable means of payment and thereafter, under the negligence standard of care, if the carrier accepts any other means of payment, the carrier will not have acted reasonably and prudently and, thus, may be held accountable. The majority, however, states that in order to avoid undermining a shipper's confidence in common carriers acting under C.O.D. contracts, the shipper must be absolutely liable for collecting payment in cash or a cash equivalent. This is an unreasonable standard to impose on modern-day shippers. The negligence standard of care will not undermine the policy underlying C.O.D. contracts, but will instead require carriers to act reasonably within the terms of its contracts with shippers in collecting payment from the consignees.

Finally, the majority asserts that requiring a carrier who enters into a C.O.D. contract to verify all purported certified checks as genuine does not impose strict liability upon the carrier. The majority insists, rather, that the shipper has a duty to verify all certified checks in order to carry out its duties under the C.O.D. contract in a reasonable and prudent manner under the circumstances. Thus, this holding would require all common carriers to verify *all* purported certified checks given in payment for any shipment. I believe, as I have previously stated, that this duty is too harsh to impose upon common carriers, regardless of whether the duty of care owing to shippers is labeled negligence or strict liability, although I believe the duty of care imposed by the majority more closely resembles the latter. Accordingly, I disagree with the majority and would overrule Swest's points of error one through eight.

Although the majority felt it unnecessary to discuss the remaining points of error, based upon my disagreement with the majority's holding on points of error one through eight, I will also address Swest's remaining points of error as well as American's cross-points.

In points of error nine through twelve, Swest contends that the jury charge, as a whole, directed the jury to irrelevant issues of negligence, thereby confusing, misleading, and misdirecting the jury, the result being reversible error. Specifically, Swest complains that the special issues dealing with its negligence in failing to investigate the financial background of Barter were unnecessary, misled the jury, and probably resulted in the rendition of an improper verdict. I disagree.

Generally, error in the submission of an issue is harmless when the jury findings on other issues are sufficient to support the judgment. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex.1980). An exception to this general rule exists, however, when the erroneously submitted issues confuse or mislead the jury. *Id.* at 750.

The jury's negative answer to the special issue as to whether American had breached the C.O.D. contracts was sufficient to sustain the judgment in its favor. Although the issues dealing with Swest's negligence may have been erroneously submitted and the method of submission may have been confusing to the jury, there is no showing that they were confused or misled into answering the issues concerning American's breach of contract by these negligence issues, especially as the breach of contract issues were submitted first. Accordingly, I would hold that the submission of the negligence issues, if erroneous, was harmless error and, accordingly, overrule points of error nine through twelve.

In point of error thirteen, Swest contends that the trial court's erroneous rulings on a number of evidentiary matters amounted to reversible error. I disagree. Swest first argues that the trial court erred in allowing American to introduce into evidence, over Swest's objection, testimony of Swest's failure to identify or investigate the background and financial status of its customer, Barter. Swest, however, cites no place in the record where these objections were made; therefore, it has waived appellate review of these contentions. *Kropp v. Prather*, 526 S.W.2d 283, 288 (Tex.Civ.App. —Tyler 1975, writ ref'd n.r.e.); *May v.*

*Consolidated Underwriters,* 170 S.W.2d 295, 296 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.); TEX.R.CIV.P. 418.

Second, Swest claims that it was error for the trial court to permit American to introduce into evidence, over objection, Tariff Rules 66, 30, and 34. Swest argues that it did not have fair notice that American was going to limit or exculpate its liability because the exculpatory and indemnity agreements on the airbill supplied by American were not conspicuous and because Swest did not consent to their inclusion in the contract. American argues that the tariff rules were properly admitted because they were incorporated by reference in Swest's own exhibit of the airbill prepared by American. I agree with this last contention.

On the back of the airbill supplied by American, under the heading "Conditions of Contract," is the notation that the shipment is accepted for carriage subject to the governing classifications and tariffs in effect and filed in accordance with law and are available for inspection by the parties and are incorporated into and made a part of the contract. Tariff Rule 30 lists the various situations when American will be exculpated from liability, and Tariff Rule 34 is an indemnification clause whereby the shipper or consignee is jointly and severally liable to the carrier for its losses in the event of violation of the applicable tariff or default of the shipper. Although these provisions were not specifically listed on the airbill, it was clearly noted on the airbill that the C.O.D. contract was subject to the applicable tariffs and that by entering into the contract Swest impliedly consented to their inclusion. Since the tariffs, therefore, were incorporated by reference into the contract, which was introduced into evidence by Swest, I find no error in their admission into evidence by the court.

Finally, Swest contends under this point of error that the trial court erred in refusing to permit it to introduce into evidence a tape recording made by the secretary for Swest's counsel of American's representations that it only accepted cash or cashier's check as payment in C.O.D. shipments. The court refused to admit the tape because an employee of Swest's who gave his deposition on behalf of Swest failed to amend his deposition which stated that Swest had not recorded any conversations with American. Swest contends that since the recording was actually made by the secretary for Swest's counsel and not Mr. Trostel, who spoke on behalf of Swest at the deposition, then his negative answer to the question, "Have *you* recorded any conversations with American Airlines?" was true, and he was under no duty to amend his answer. I refuse, however, to draw such a distinction. American subpoenaed Swest, which then selected two employees to speak on its behalf, one of whom was Trostel. Thus, Trostel spoke on behalf of Swest in the deposition. A party is under a duty to supplement his response in a deposition if he obtains information upon the basis of which he knows that the response, though correct and complete when made, is no longer true and complete and the failure to amend the answer is misleading. TEX.R.CIV.P. 166b. Thus, Swest, as a party to the lawsuit, had a duty to supplement the answers of Trostel, its representative in the deposition, as to whether Swest made any tape recordings of any conversations with American because other representatives of Swest knew of the recording. I refuse to accept Swest's argument that because Trostel was unaware of any tape recordings made by any other representative of Swest, then Swest was under no duty to supplement the answers given by Trostel in his deposition taken on behalf of Swest. Acceptance of this contention would render the duty to supplement meaningless in cases in which a corporation with several representatives was involved. Since no supplemental answers were given by Swest, the imposition of sanctions was within the broad discretion of the trial court. *See Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 442–44 (Tex. 1984). Accordingly, I would hold that the exclusion of the tape was not an abuse of discretion by the trial court, and thus overrule point of error thirteen.

In its final point of error, Swest contends that American was not entitled to attorney's fees under either TEX.REV.CIV. STAT.ANN. art. 2226 (Vernon Supp.1984), or Tariff Rule 34, which was the indemnity clause incorporated by reference into the C.O.D. contract. I agree.

American contends that it is entitled to recover attorney's fees under article 2226, which authorizes recovery of attorney's fees in suits "founded on oral or written contracts." American contends that this language does not limit the statute's applicability to suits for breach of contract and thus allows the prevailing party, be it plaintiff or defendant, to recover attorney's fees. I disagree.

As a general rule, attorney's fees are not recoverable against an adversary unless expressly provided for by statute or by contract between the parties. *Bray v. Curtis*, 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Article 2226 has been construed to authorize an award of attorney's fees in actions *founded on* oral or written contracts, without limitation strictly to suits for *breach* of contract. *Ellis v. Waldrop*, 627 S.W.2d 791 (Tex.App.—Fort Worth 1982) aff'd in part and rev'd in part on other grounds, 656 S.W.2d 902 (Tex.1983). However, *Ellis* involved conflicting claims under a contract, which is distinguishable from the circumstance in this case in which no such conflicting claims were filed. I find nothing in the statute authorizing an award of attorney's fees to American in this case, and, thus, an examination of the contract between the parties is necessary in order to determine if attorney's fees are authorized.

Tariff Rule 34, which was incorporated into the shipping contract by reference, provided that the shipper and consignee would be liable, jointly and severally, to indemnify the carrier for all claims, damages, fines, *costs*, or other charges incurred by the carrier as a result of any violation of the rules contained in the applicable tariffs or by any other default of the shipper or anyone connected with the shipment. Thus, American contends that Swest must indemnify it for its *costs* of investigation

and attorney's fees in defense of Swest's lawsuit because Swest was negligent in failing to investigate Barter's background. In support of its contention that costs also include attorney's fees, American cites *Mundy v. Knutson Construction Company*, 156 Tex. 211, 294 S.W.2d 371 (1956), in which a contractor sued a subcontractor for damages. A performance bond given by the subcontractor stated that the subcontractor would repay the contractor all costs and expenses incurred in prosecution of any suit or suits on account of breach of contract. The court held that the contractor's attorney's fees for prosecution of the case was recoverable under the bond.

*Mundy* is clearly distinguishable, however, from this case. Tariff Rule 34 does not contain any such language entitling American to recover its expenses for prosecution of a breach of contract and in fact limits its rights to indemnification to incidents involving a violation by the shipper of the tariff rules or a default by the shipper or anyone connected with the shipment. There is no evidence of a violation by Swest of a tariff rule and American itself maintained at trial that there was no default of the shipping contract. Thus, I would hold American is not entitled to recover attorney's fees by virtue of Tariff Rule 34. Accordingly, I would hold that American is not entitled to attorney's fees under either article 2226 or Tariff Rule 34 and, therefore, I would reverse and render that American take nothing for attorney's fees.

In one of its cross-points, American contends the court erred in striking its counterclaim for a declaratory judgment that it was not liable under the contracts and for attorney's fees. TEX.REV.CIV.STAT. ANN. art. 2524–1 (Vernon 1965 and Vernon Supp.1984). American contends that its counterclaim would have properly formed another basis for its recovery of attorney's fees. I disagree. In *Texas Liquor Control Board v. Canyon Creek Land Corp.*, 456 S.W.2d 891 (Tex.1970), the Texas Supreme Court determined that as a general rule "an action for declaratory judgment

will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory action." *Id.* at 895. All the issues in American's counterclaim were capable of being resolved under Swest's action against American; therefore, the trial court's dismissal of the counterclaim was proper. Accordingly, I would overrule this cross point of error.

The points previously discussed herein would be dispositive of this appeal and thus I will not address American's remaining cross-points of error. I would affirm the judgment in part and reverse and render in part.