**LITTLETON STAMP AND COIN CO., INC., Plaintiff, Appellee,**

v.

**DELTA AIRLINES, INC., Defendant, Appellant.**

**No. 84–2042.**

United States Court of Appeals, First Circuit.

Argued May 8, 1985.
Decided Nov. 27, 1985.

Matthias J. Reynolds, with whom Daniel J. Callaghan and Devine, Millimet, Stahl & Branch Professional Association, Manchester, N.H., were on brief, for defendant, appellant.

Mark S. Moeller, with whom Peter A. Handy and Cooper, Hall, Whittum & Shillaber, P.C., Rochester, N.H., were on brief, for plaintiff, appellee.

Before COFFIN and TORRUELLA, Circuit Judges, and WYZANSKI,* Senior District Judge.

COFFIN, Circuit Judge.

Appellant Delta Airlines entered into contracts with appellee Littleton Stamp and Coin Co. in which it agreed to make two shipments of coins from New Hampshire to New York City and to collect the price of the coins from Littleton's customer at the airport in New York. The contracts, which were in the form of Uniform Airbills, authorized the carrier to accept certified checks in payment for the goods. Although appellant twice collected what ap-

---

* Of the District of Massachusetts, sitting by designation.

peared to be certified checks, they turned out to be forged. The district court, on a motion for summary judgment, found appellant liable for the market value of the coins on the ground that a C.O.D. carrier that defaults on its obligation to collect a sum certain is strictly liable to the consignor. The court later directed a verdict for appellee on damages, adopting the contract amount as the proper measure. We find that strict liability is inappropriate in these circumstances and thus remand for a trial on whether appellant exercised due care when it accepted the forged checks. We also direct the district court, if appropriate, to consider further proceedings on the amount of damages in light of our discussion of that issue below.

■ We note at the outset that the Pomerene Bills of Lading Act, 49 U.S.C. §§ 81–124, was properly interpreted by the district court as inapplicable to the circumstances of this case. The almost if not completely unanimous case law recognizes two duties when a carrier is to deliver goods on a C.O.D. basis, the common law duty of a common carrier to transport the goods and the separate, contractual duty to collect payment for them. *See Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1375 (9th Cir.1978); *National Van Lines v. Rich Plan Corp.*, 385 F.2d 800, 802 (5th Cir.1967); *The Video Station v. Frey's Motor Express*, 188 N.J.Super. 494, 457 A.2d 1217, 1218–19 (1983); *Tyler Refrigeration Corp. v. IML Freight*, 427 N.E.2d 718, 720 (Ind.App.1981); *Mountain States Waterbed Distributors v. O.N.C. Freight Systems Corp.*, 44 Colo.App. 433, 614 P.2d 906, 907 (1980); *Crown Displays v. Calore Freight System*, 115 R.I. 483, 348 A.2d 373, 374 (1975); *Herrin Transportation Co. v. Robert E. Olson Co.*, 325 S.W.2d 826, 827 (Tex.Civ.App.1959); *Nuside Metal Products v. Eazor Express*, 189 Pa.Super. 593, 152 A.2d 275, 279 (1959); *Willer v. Railway Express Agency*, 86 A.2d 104, 107 (Mun.Ct.App.Dist.Col.1952); *Justin v. Delta Motor Line*, 43 So.2d 53, 55 (La.Ct.App. 1949); *Bond Rubber Corp. v. Oates Bros.*, 136 Conn. 248, 70 A.2d 115, 117 (1949); *Barnhart v. Henderson*, 147 Neb. 689, 147 Neb. 982, 24 N.W.2d 854, 861 (1946); *Okin v. Railway Express Agency*, 24 N.J.Misc. 8, 44 A.2d 896, 896 (1945); *Mogul v. Lavine*, 247 N.Y. 20, 159 N.E. 708, 709 (1928); *Anthony v. American Express Co.*, 188 N.C. 407, 124 S.E. 753, 754 (1924); Annot., 27 A.L.R.3d 1320 (1969); 13 C.J.S. *Carriers* § 186 (1939); 13 Am.Jur.2d *Carriers* § 454 (1964). As the district court noted, the Bills of Lading Act governs the first duty, setting standards on such matters as loading, delivery and contents of the bill. It makes no reference to, and logically does not cover, the collection duties which are established and governed solely by private contract. *See The Video Station*, 457 A.2d at 1219 n. 1.

■ It is in its capacity as bailee to carry and deliver goods that a common carrier historically has been held to strict liability. *See Coggs v. Bernard*, 2 Ld. Raym. 909, 917–18 (1703). As for the carrier's other role, which is the one at issue here, we agree with the approach of those courts which look to the C.O.D. contract as establishing an agency in the carrier to collect a debt for the shipper. *The Video Station*, 457 A.2d at 1219; *see generally Swest, Inc. v. American Airlines*, 694 S.W.2d 399 and at 404 (Vance, J., dissenting) (Tex.Ct.App.1985). The duties of such an agent are described in the Restatement (Second) of Agency, § 426 (1957): "Unless otherwise agreed, an agent employed to collect from others goods or money due the principal has a duty of using *reasonable care* and skill in making such collections in accordance with the directions of the principal." (Emphasis added.) *See also* 3 C.J.S. *Agency* § 304a (1973).

■ It is important to recognize that this standard of due care does not apply to every sort of action a carrier might take in executing its collection duties. The duty is to use reasonable care in collecting payments *"in accordance with the directions of the principal"*. It thus applies in cases such as this one, where the shipper specifically authorized the carrier to accept certified checks, and the carrier at least facially

complied with these instructions by obtaining what appeared to be certified checks. When the carrier totally fails to abide by the shipper's instructions, it unquestionably has breached the C.O.D. contract and the issue of reasonableness almost always will be irrelevant. Cases in which carriers attempt to follow shippers' instructions are, therefore, distinguishable from that facing Chief Judge Cardozo in the oft-cited *Mogul v. Lavine*, 159 N.E. 708, where the shipper did not endorse a specific alternative to cash, from the New Hampshire case of *Murray v. Warner*, 55 N.H. 546 (1875), where the carrier obtained no payment, and from recent cases such as *Cermetek*, 573 F.2d 1370, and *National Van Lines*, 385 F.2d 800, where the carriers also departed from the shippers' instructions by accepting company checks rather than cash or certified checks. When a carrier fails to obtain any payment or when it accepts a form of payment not authorized by the shipper, it is logical to find that the carrier "took the risk and lost", *Mogul v. Lavine*, 159 N.E. at 709.

In several cases whose facts are similar to those here, courts have applied the reasonableness standard to reach conflicting results on the liability of a carrier who accepts a forged certified check. The Supreme Court of New Jersey, in *The Video Station v. Frey's Motor Express*, 457 A.2d 1217, found the defendant carrier liable because the forgery should have been detected from the face of the purported certified check. Missing from the check was the required signature of an officer of the certifying bank. In finding the carrier negligent, the New Jersey court held that " 'a defendant which is in the business of accepting C.O.D. shipments for delivery should reasonably be required to educate its agents and employees as to the identifying characteristics of a certified check' ". 457 A.2d at 1220.

*Duderstadt Surveyors Supply v. Alamo Express*, 686 S.W.2d 351 (Tex.Ct.App.), *aff'd by Texas Supreme Court*, May 22, 1985, involved a carrier's acceptance of a cashier's check which contained no facial defects. The Texas Appeals Court found sufficient evidence to support the finding that the carrier had exercised reasonable care and diligence in accepting the check and forwarding it to the carrier. In another Texas case, *Swest, Inc. v. American Airlines*, 694 S.W.2d 399 (Tex.Ct.App. 1985), a majority of the appeals panel found that the carrier had breached its duty because it made no attempt to verify two purported certified checks which turned out to be forged.

In this case, too, appellant carrier apparently made no effort to verify the checks it received upon delivering the coins for appellee. We can not say, however, that this failure alone establishes a breach of appellant's contractual duty to serve as collection agent. Several factors exist which make the exercise of due care in this case a genuine issue of material fact. First, appellee made a clear choice to have the check made out to it rather than to appellant. A representative of appellant testified that the airline offers shippers that choice because it only verifies certified checks made payable to it, largely because it has difficulty obtaining verification when it is neither payor nor payee on a check. Appellant argues that appellee was aware of this difference in policy.

Second, the planes carrying the coins were scheduled to land in New York after 6 p.m. on Friday evening—after business hours and thus presumably after appellant could call a bank to verify a check—but appellant nevertheless was instructed that the buyer would pick up the coins within three hours after the planes' arrivals. Third, appellee informed appellant by rather matter-of-fact postcripts in letters concerning the three-hour pick-up time that "A certified check will be presented by Mr. Barry for payment." It reasonably could have appeared to appellant that the payment method had been discussed in some detail by appellee and its buyer, and the letters gave no indication that appellee was suspicious about whether Mr. Barry would present a valid certified check. To the contrary, the letters are so matter of fact,

that it may have been reasonable to assume that appellee already had cleared the checks. Finally, while the first airbill permitted "cash or certified check only", the second specified only certified check, suggesting at least for that shipment even less concern about the buyer's reliability.

Although these factors suggest that appellant acted reasonably in accepting the certified check, we do not mean to imply that a factfinder could reach only that conclusion. Other circumstances also must be considered. Appellant did not, in fact, turn over the first set of coins within three hours after the plane's arrival in New York. The buyer arrived at the airport with only one check, made out to appellee, covering both the cost of the coins and appellant's shipping charges. Appellant refused to deliver the coins until the buyer returned Saturday morning with separate payments. If the buyer could obtain a new check during the weekend, it might be reasonable to charge appellant with the responsibility of verifying that check. In addition, appellant in its brief emphasizes that its standard practices are part of the contract. Appellant's Exhibit D, titled Standard Practice, states: "If the instrument tendered is for more than $10,000 ... verify with the issuing bank or agency". Although this internal practice ordinarily would impose no obligation on appellant vis a vis appellee, if this practice can be viewed as incorporated by reference in the contract between them, and if appellee relied on this practice in choosing the method of payment, a factfinder could find appellant's actions to be unreasonable. Whatever the resolution of the issue of due care, however, it is clear that the matter is inappropriate for summary judgment.

In finding liability as a matter of law against a carrier which, like appellant in this case, failed to take any steps to verify a purported certified check, the majority in *Swest* suggested that any other result "would undermine the policy and purpose of C.O.D. shipments", 694 S.W.2d at 402. We disagree that absolving such a failure necessarily destroys the principle of C.O.D. deliveries. The policy behind C.O.D. trans-

actions is to "assure that the carrier cannot make an absolute delivery without collecting, thereby leaving the shipper to his recourse against the consignee", *National Van Lines*, 385 F.2d at 803. The Ninth Circuit similarly described the purpose of the C.O.D. arrangement:

> "The seller generally utilizes a C.O.D. contract because he either does not trust the buyer or does not intend to advance credit ... [W]hen utilizing the C.O.D. method the seller clearly indicates he wants liquid assets, not a contract claim against a distant buyer who may be insolvent, litigious, dishonest, or all three." *Cermetek*, 573 F.2d at 1379.

This policy has its basic application when the carrier's contractual duty is to accept only cash. When a shipper makes a judgment to allow payment by certified check as an alternative to cash, however, it seems inappropriate to hold the carrier liable as a matter of law simply because the check turns out to be bogus, regardless of the circumstances surrounding the transaction. A shipper which decides to gamble by accepting other than cash should not be able to simply shift the increased risk to the carrier—particularly if the evidence shows that the carrier specifically declined such a burden. We find the language of a Kentucky appeals court apropos on this point:

> "We believe that placing responsibility upon UPS to ascertain the sufficiency of the checks received to satisfy the requirements of the order, *in light of the directions given to UPS*, creates an undue burden upon UPS in performing its duties. UPS is not involved in the banking business and is not in a position to credit or discredit negotiable instruments beyond their duty of examining the face of the check to determine whether it comports to instructions given UPS." *Shockley v. United Parcel Service*, 664 S.W.2d 523, 524–25 (1984). (Emphasis added.)

We thus remand this case to the district court for a trial on the issue of whether appellant fulfilled its contractual duty of

due care in light of the particular circumstances of this case.[1]

■ It is also necessary to say something about appellee's possible remedy here, since the proper approach to damages in this context is a source of some confusion. The general rule appears to be that damages for breach of the collection agent duty are prima facie the contract amount that was to be collected. The burden then shifts to the carrier to prove in mitigation that collection would not have occurred even if the carrier had fulfilled its contractual obligation with due care. *See, e.g., National Van Lines,* 385 F.2d at 803; *Herrin Transportation Co. v. Robert E. Olson Co.,* 325 S.W.2d at 827–28; *Mogul v. Lavine,* 159 N.E. at 709–10. In such cases, the courts have held that the limit on damages is the value of the goods, providing that the carrier meets a second burden of demonstrating that the value is less than the amount to be collected.

In *Cermetek,* 573 F.2d 1370, the Ninth Circuit declined to allow the carrier an opportunity to reduce damages by showing either lesser value of the goods or uncollectibility. It held that, in the absence of fraud, ratification or fault on the part of the consignor, the C.O.D. amount should remain unchallengeable as the measure of damages. *Id.* at 1379.

■ We align ourselves generally with Chief Judge Cardozo and what apparently is the majority view. *See* 13 C.J.S. *Carriers* § 386; 13 Am.Jur.2d *Carriers* § 459. It is inappropriate to treat the carrier's failure to collect as its assumption of the debt, *Mogul v. Lavine,* 159 N.E. at 709; *Herrin Transportation Co.,* 325 S.W.2d at 828, and so the compensable loss from an uncollectible debt should be only the value of the lost goods. It is the carrier's bur-

den, however, to show uncollectibility, and this should not be an easy task. We therefore disagree with Chief Judge Cardozo's conclusion that "a consignee willing to utter a forged and worthless check would not have paid cash if the check had been rejected", 159 N.E. at 710. Any number of circumstances can be imagined in which a buyer who wanted the goods badly enough would somehow have obtained the funds to pay the C.O.D. amount—perhaps even by defrauding someone else for the money. It would seem that, in the absence of direct evidence of the buyer's intent not to pay, the carrier should be able to depreciate the contract amount only in instances in which the amount to be collected was so out of proportion to the value of the goods that no reasonable person would conclude the buyer actually intended to make the payment. Of course, in keeping with this view that the shipper's measure of recovery should be its loss, where the goods are not lost, the shipper also should be charged with efforts to mitigate. *See, e.g., National Van Lines,* 385 F.2d 800 (shipper rejected carrier's offered return of the shipped goods and made no attempt to resell the items).

In this case, it is unlikely that appellant could meet either its burden of proving uncollectibility or its burden of showing value less than the contract amount. The fraudulent buyer is apparently not to be found, and so direct evidence of an intent not to pay is unavailable. The contract price was based on appellee's printed schedules, and there is no allegation that the prices were so outrageous as to show uncollectibility of the amount due. There is also no suggestion of fraud or other extenuating circumstances affecting the transaction.

1. Appellant's ratification argument is without merit. "Knowledge of all material facts is indispensable in order to bind the principal by ratification", *Mountain States Waterbed Distributors v. O.N.C. Freight Systems Corp.,* 44 Colo. App. 433, 614 P.2d 906, 907 (1980). In this case, the certified checks were facially valid and appellee had no knowledge of the forgeries when it accepted them. In *Mountain States Waterbed,* in contrast, the carrier obtained a company check rather than the requested cashier's check. The shipper accepted the payment and deposited the check, leading the court to observe that "a shipper's unconditional acceptance from a carrier of a form of payment not in conformance with the shipping contract constitutes a ratification of the carrier's act", *id.* at 907.

We therefore think the district court's directed verdict on damages in all likelihood produced the correct result. If, however, appellant on remand is found liable and offers evidence sufficient to meet its burdens on the issues of uncollectibility and value, it should be given the opportunity to have the damages issue considered anew.

*For the foregoing reasons, we remand this case to the district court for trial on the issue of liability and, if appropriate, for consideration of further proceedings on the issue of damages.*