AMERICAN AIRLINES, INC.,
Petitioner,

v.

SWEST, INC., Respondent.

No. C–4439.

Supreme Court of Texas.

April 16, 1986.
Rehearing Denied June 23, 1986.

Kevin H. Good, David A. Schwarte, Dallas, for petitioner.

Thomas W. McKenzie, Ray G. Besing, Ray G. Bessing & Associates, Arch M. Skelton, Bliss & Hughes, Dallas, for respondent.

ROBERTSON, Justice.

This is a case involving the standard of care imposed upon a carrier when collecting payment for a C.O.D. shipment. American Airlines delivered two separate shipments for Swest, Inc., to Swest's consignee, Scott Barter. Barter tendered forged certified checks to American in exchange for the goods. Swest then sued American for breach of the C.O.D. contract and negligence in failing to verify the certified checks before delivering the goods.

Based upon the jury's answers to special issues, the trial court rendered judgment in favor of American and awarded American reasonable attorney's fees. The court of appeals, with one justice dissenting, reversed and rendered judgment that American had "as a matter of law" breached its duty under the C.O.D. contract and was not entitled to recover attorney's fees. 694 S.W.2d 399. Judgment of the court of appeals is reversed and the cause remanded to that court for consideration of the remaining points.

Unless the terms of the C.O.D. contract provide otherwise, the carrier, acting as collection agent for the shipper, "has the duty of using reasonable care and skill in making such collections." *Duderstadt Surveyors Supply, Inc. v. Alamo Express, Inc.*, 686 S.W.2d 351, 355 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) (quoting RESTATEMENT (SECOND) OF AGENCY § 426 (1958)).

The court of appeals, in this case, went one step further than the *Duderstadt* court and held that the exercise of reasonable care includes the absolute duty to verify certified checks. 694 S.W.2d at 402. In support of its position, the court of appeals relied upon the 1928 case of *Mogul v. Lavine*, 247 N.Y. 20, 159 N.E. 708 (1928), in which the New York court of appeals held that the carrier was liable for damages when it accepted bogus certified checks instead of cash for a C.O.D. delivery.

We refuse to take that additional step. Instead, we choose to follow the reasoning of the court in *Littleton Stamp & Coin Co. v. Delta Airlines, Inc.*, 778 F.2d 53 (1st Cir.1985), and hold that the court of appeals erred by imposing the absolute duty to verify. We hold, as did the *Littleton* court, that the carrier has the duty to exercise reasonable care when collecting payment for the shipper. *Id.* at 56. Whether the circumstances of the case are such that the exercise of reasonable care requires verification is a question of fact to be determined by the fact finder.

In answer to the special issues requested by Swest, the jury found that American had not breached its C.O.D. contract with Swest by failing to use ordinary care and diligence in collecting payment for the shipments. The proper duty of reasonable care was contained within the issues.

On appeal, Swest also contended that American breached its C.O.D. contract as a matter of law because the only methods of payment contemplated by the parties were cash or cashier's check. American and the dissent in the court of appeals correctly point out that the method of payment contemplated was a disputed fact issue. The jury resolved that issue adversely to Swest when it answered that American had not breached its C.O.D. contract. Swest raised a no evidence point of error regarding the answers to the special issues. We must, therefore, determine whether there is some evidence to support the jury's answers. *Tomlinson v. Jones*, 677 S.W.2d 490 (Tex. 1984).

There was evidence that Barter, Swest's consignee, had paid for two prior C.O.D. shipments with a cashiers check and an unverified certified check, both of which were accepted by Swest and honored by the accepting bank. An American representative testified that American had agreed to accept cash, cashier's checks, certified checks, traveler's checks, or money orders

as payment. When the deliveries were made, American required identification from Barter, took photos of Barter, and examined the checks. Swest's accounting manager testified that there was nothing apparent on the face of the checks that would alert anyone to the forged certification. The checks were accepted by Swest's accountant, as well as the depository bank. At no time prior to the dishonor of the checks did Swest object to the form of payment.

Furthermore, as in *Littleton*, the planes carrying the shipments were scheduled to land after business hours and presumably after American could call a bank to verify the checks. *See Littleton*, 778 F.2d at 56. The fourth delivery was sent express mail, with Swest paying an increased fee to ensure arrival at La Guardia Airport around midnight.

We find that such evidence supports the jury's finding that American did not breach its C.O.D. contract by failing to exercise reasonable care in accepting the certified checks.

The court of appeals reasoned that "to hold that a C.O.D. carrier need not verify purported certified checks ... would significantly undermine the confidence of shippers that they would receive cash or its equivalent in payment for their C.O.D. shipments." 694 S.W.2d at 402. Such is simply not the case. To require verification of payment other than cash would significantly undermine the shipping and delivery industry. Nothing more readily demonstrates the effect of such requirement than the shipments involved in this case. Shipment number four was an express air shipment for which a premium price was paid. The plane was scheduled to arrive in New York after midnight. To hold the shipment until the following day, when verification of the check could be made, would completely defeat the purpose of the express air delivery.

Furthermore, there are other methods of maintaining shippers' confidence such as contractually requiring that payment be made in cash only or requiring verification where payment is in a form other than cash.

■ American contends that it is entitled to recovery of attorney's fees pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226 [1] and rule 34 of the Conditions of Carriage. Article 2226 provides that a person may recover reasonable attorney's fees in addition to the amount of a valid claim and costs if the claim is based upon an oral or written contract. In order for attorney's fees to be recoverable under the statute, American would have had to present a claim to Swest based upon the contract. Tex.Rev.Civ.Stat. Ann. art. 2226. Payment for the just amount owed must not have been tendered by Swest before expiration of the 30th day after the claim was presented by American. *Id.* American had no claim to present. There is no basis upon which to allow American recovery of attorney's fees under the statute.

Neither is American entitled to recovery of attorney's fees pursuant to tariff rule 34. American relies upon the case of *Mundy v. Knutson Construction Co.*, 294 S.W.2d 371 (Tex.1956), in support of its contention that "costs" include attorney's fees. *Mundy* involved the recovery of attorney's fees under a construction bond. Since the language of the bond provided for recovery of costs and expenses incurred in the prosectution of a suit or suits on a breach of the construction contract, the court allowed recovery of attorney's fees as an "expense" incurred in the prosecution of the suit. *Id.* at 374. The language of the bond was held to demonstrate that the parties contemplated suit for breach of the contract and attorney's fees incurred as an expense of the suit. *Id.*

■ The language of tariff rule 34 does not demonstrate that the parties contemplated suit for breach of the shipment contract

---

**1.** Recodified in Tex.Civ.Prac. & Rem.Code §§ 38.001–.006, 1985 Tex.Sess.Law Serv. 7123    (Vernon).

nor does it demonstrate any intention to allow recovery of attorney's fees as an expense incurred in prosecution of such suit. As the dissent in the court of appeals correctly pointed out, rule 34 provides indemnification to the carrier for costs incurred by reason of violations of the tariff rules or any other default by the shipper or anyone connected with the shipment, but does not refer to the prosecution of suits. The term "costs" simply does not include attorney's fees. *See Johnson v. Universal Life & Accident Ins. Co.*, 127 Tex. 435, 94 S.W.2d 1145 (Tex. Comm'n App.1936, opinion adopted). Therefore, we hold American is not entitled to recover attorney's fees pursuant to either article 2226 or tariff rule 34.

We reverse the judgment of the court of appeals and remand the cause to that court for consideration of the remaining points.

SPEARS, J., dissents.

SPEARS, Justice, dissenting.

I respectfully dissent. While I agree with the majority's view that a carrier has the duty of reasonable care in collecting payment, I disagree with its disposition. I would remand for a new trial, because I believe trying and submitting Swest's comparative negligence was harmful error.

The trial focused on Swest's comparative negligence. Besides denying its own negligence, American Airlines' major defense at trial was to contend that Swest was negligent in not identifying and investigating its customer. Eight of the eighteen issues asked about Swest's comparative negligence. Issues 11–16 asked whether Swest had failed to identify and investigate its customer's background and whether such failure was negligence. Issues 17 and 18 asked the jury to apportion the negligence between Swest and American Airlines. Swest timely and properly objected. The jury found Swest 100% negligent, American 0%.

A shipper's negligence is not relevant in C.O.D. collection disputes for several reasons. First, submitting issues on a shipper's comparative negligence undermines the purpose behind the parties' contractual arrangement. Shippers contract for C.O.D. services at a large premium because they do not trust their customers:

> The seller [the shipper] generally utilizes the C.O.D. contract because he either does not trust the buyer or does not intend to advance credit.... [W]hen utilizing the C.O.D. method the seller clearly indicates he wants liquid assets, not a contract claim against the distant buyer who may be insolvent, litigious, dishonest, or all three.

*Littleton Stamp & Coin Co. v. Delta Airlines, Inc.*, 778 F.2d 53, 57 (1st Cir.1985), quoting *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1379 (9th Cir.1978). This court, however, penalizes shippers for selling to untrustworthy customers—the very reason why shippers purchase C.O.D. services. The majority is saying that Swest is negligent for sending its shipments C.O.D.—for using American Airlines' contractual services. Such a position is untenable.

Second, while the carrier's duty of reasonable care arises from the C.O.D. contract, Swest has no contractual duty to investigate its C.O.D. customers, and there is no reason to impose such a tort duty upon shippers. Thus, the *Restatement of Agency (Second)* § 426, which deals with the duties of principals and agents in making collections, does not mention any duty of shippers (principals) to identify and investigate their customers.

Furthermore, arguing and submitting the shipper's negligence distracts the jury from the real issue: whether the carrier used reasonable care in collection. Because in these cases consignees are defrauders, every trial will be a debate over whether the carrier was negligent in collecting or the shipper in failing to investigate its customer, and the jury's focus will be divided and blurred. This provides carriers with an unwarranted tactical advantage.

This error was harmful. When issues are submitted improperly, we consider the error in light of the charge as a whole.

*Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980); *Texas Employers Ins. Ass'n v. McKay,* 210 S.W.2d 147, 149 (Tex.1948). Although generally when the jury's answers to other issues are sufficient to support the judgment an erroneous submission is harmless, an erroneous submission is reversible if it confuses, prejudices, or misleads the jury. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d at 750; *H.E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501, 504 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.).

The submission of Swest's negligence confused and misled the jury. Although Swest's negligence is irrelevant, almost half the special issues submitted and much of American Airline's argument to the jury concerned this issue.

Moreover, the evidence for American Airlines' negligence was formidable, again indicating that the jury was confused and misled. American Airlines provided its courier with *no* training for spotting fraudulent checks and driver's licenses. According to American Airlines' own expert, it was "readily apparent" to a trained person that Barter's driver's license was fictitious. If the courier had spotted, as he should have, the fictitious license, then he would have rejected the fraudulent checks.

Lastly, Swest demonstrated that it was easy and affordable for couriers to carry copies of certified checks from the area's banks, although American Airlines' courier did not. If he had, then he would have noticed obvious discrepancies between a genuine certified check from Marine Midland Bank and the fraudulent check presented American Airlines: (1) on a genuine check, below the word "certified" is printed "payable only as originally drawn and when properly endorsed," which does not appear on the fraudulent check; (2) on a genuine check, the date appears to the left and the control number to the right, whereas they are reversed on the fraudulent check; (3) on a genuine check's stamp, "110 Williams Street" follows "Marine Midland Bank" and under that appears "New York, New York," whereas in the fraudulent check, "Williams Street Branch" follows "Marine Midland Bank," which appears in much smaller print, and there is no reference to New York.

Relying upon *Boatland of Houston, Inc. v. Bailey,* American Airlines, however, argues that if there were error in submitting Swest's negligence, it was harmless. In *Boatland,* the jury found that the product was not defective and that the plaintiff had both assumed the risk and misused the product. We held that even if it were error to submit issues on the plaintiff's misuse and assumption of the risk, it was harmless because the jury found the product not defective. 609 S.W.2d at 750. At that time, we were unwilling to address the relevance of the plaintiff's contributory negligence, but the law was clearly moving in that direction and therefore we found harmless error. *See Duncan v. Cessna,* 665 S.W.2d 414, 423 (Tex.1984). In this case, however, an important defense at trial and almost half the issues submitted focused on a totally irrelevant legal issue, the shipper's failure to investigate and identify its customer.

Because I believe a shipper's negligence is irrelevant in C.O.D. collection disputes, I would remand the cause to the trial court for a new trial.