Opinion issued April 15, 2010












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00497-CV




Terry G. Whitton, Appellant

V.

Edward M. and April Loescher, Appellees




On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2006-00753




MEMORANDUM OPINION

          Following a bench trial, the trial court found that the appellees, Edward and
April Loescher, did not have actual or constructive knowledge of the defects in the
house that appellant, Terry Whitton, purchased from them. The Loeschers then filed
a motion requesting that final judgment be entered in their favor. The trial court’s
Final Judgment ordered that Whitton take nothing by his suit and that the Loeschers
recover attorney’s fees and court costs from Whitton. On appeal, Whitton argues that
the trial court erred: (1) in awarding the Loeschers attorney’s fees; (2) in finding that
the Loeschers made no misrepresentations; (3) in finding that Whitton was “barred”
from relying on the Loeschers’ disclosures as a producing cause of his damages; and
(4) in failing to find that Whitton was entitled to recover his damages and attorney’s
fees. 
          We affirm.
Background
          On May 16, 2004, Whitton entered into an earnest money contract with the
Loeschers for the purchase of his current residence in Harris County, Texas. Section
17 of the earnest money contract states, “The prevailing party in any legal proceeding
related to this contract is entitled to recover reasonable attorney’s fees and all costs
of such proceeding incurred by the prevailing party.” The earnest money contract
also provides, “This contract contains the entire agreement of the parties and cannot
be changed except by their written agreement. Addenda which are a part of this
contract [include] . . . Sellers [sic] Disclosure.”
          Before completing the sale, Whitton hired an inspector to assess the condition
of the house. The inspection report indicated some areas of concern that were
subsequently investigated by Whitton, and it contained a note regarding the presence
of a mark or stain of unknown origin on the dining room ceiling. Whitton claims that
after reading the report about the stain, he consulted the Seller’s Disclosure Notice
filled out by the Loeschers to ascertain whether they had experienced any leaks in the
house. The disclosure statement did not mention any leak problems, nor did the
Loeschers indicate that they were aware of any defects in the ceiling. However, the
disclosure statement did not inquire about previous repairs in these sections—the
form only inquired into previous repairs involving flooding, structural repairs like
roof repairs, and termite damage. The Loeschers indicated that the house had
undergone roof repairs, that both the front and back roofs had been replaced, and that
there had been previous termite damage that had been repaired.
          Within months of moving into the house, Whitton began to experience various
problems. In December 2004, the dining room ceiling collapsed due to a leak in the
part of the ceiling located underneath the attached second story balcony. Whitton
commissioned Brad Blakeway, a general contractor, to replace the sheetrock and
repair the balcony; however, in July 2005, the same leak returned and a second leak
opened up. It was at this point that Whitton began to believe that the “Loeschers had
more knowledge of the property’s condition than they had disclosed.” 
          Whitton filed suit against the Loeschers, alleging causes of action for non-disclosure and false disclosure, statutory fraud in a real estate transaction, common
law fraud, and deceptive trade practices and seeking actual damages, exemplary
damages under the fraud claims, treble damages for the deceptive trade practices
claim, and attorney’s fees for the deceptive trade practices claim and under Texas
Civil Practice and Remedies Code section 38.001. The Loeschers denied Whitton’s
allegations, and alleged affirmative defenses and a counterclaim for attorney’s fees. 
Their counterclaim stated:
[Whitton’s] suit is groundless in fact and has been brought in bad faith
and for the purpose of harassment. Section 17 of the [earnest money
contract] provides, “The prevailing party in any legal proceeding related
to this contract is entitled to recover reasonable attorney’s fees and all
costs of such proceeding incurred by the prevailing party.” Pursuant to
Section 17 of the Contract and [Business and Commerce Code] Section
17.50(c) and [Texas Civil Practice and Remedies] Code Section 38.001,
Counter-Plaintiffs are entitled to their costs and such reasonable and
necessary attorney’s fees as are equitable and just for the prosecution of
this Counterclaim.
 
          During the bench trial, Whitton testified that his examination of the disclosure
statement led him to assume that the reason for the stain noted in the inspector’s
report was no longer an issue and that he relied on the statement to his detriment. He
also presented the testimony of several experts.
          Blakeway, the general contractor who completed the repairs on the home,
testified that the flashing area, where the concrete meets the wall, in the attached
balcony had been heavily caulked with silicon sealer in a manner that suggested it
was done to stop a leak. While in the process of repairing the balcony, Blakeway
observed that the galvanized steel joist hangers located underneath the concrete and
above the dining room ceiling were heavily rusted. He testified that the most likely
scenario, judging by the extent of the rust, was that a persistent leak problem over the
years caused the joist hangers to reach that level of deterioration. Blakeway further
testified that the presence of various types of sheetrock in the dining room ceiling and
the lack of insulation between the balcony floor and the dining room ceiling, where
it normally should be, were both indicators of prior repairs. He testified that he could
not determine how long it would take for the leak to manifest in the ceiling of the
dining room, stating, 
[Blakeway]:           This was a seeping leak. The plywood soaked up
some of the water. The joists were soaking wet. 
Finally they get full of water like a sponge and then
they start leaking getting the sheetrock wet and start
spreading. It takes a while for it. It is not a flood. 
It is just a seeping leak in there.
 
[counsel]:              So do you know from these stain pictures how long
water would accumulate in there before it would
break the sheetrock?
 
[Blakeway]:           Before it would stain the sheetrock?
 
[counsel]:              Yes.
 
[Blakeway]:           No. It just depends on—how the volume of water
coming in, I really couldn’t state how long it would
take not knowing the volume of water. How much
rain [did] you get. Which way did the wind blow? 
It only leaks at certain times.
. . . .
[counsel]:              This sheetrock obviously was compromised in
December of ‘04. Can you form an opinion from
what you have seen in water stains from this stain
here as to how long before December ‘04 it could
have gone without the sheetrock being compromised
again?
 
[Blakeway]:           No.
 
          Whitton’s other expert witness, a leak specialist, Brian Beach, testified that the
leak in the dining room was coming from the base of the double doors in the balcony
due to faulty, damaged weather stripping and the upstairs sidelights, where the wood
had rotted away. Beach testified that he could not tell how long it had taken for the
wood around the sidelight to rot, but that “[i]t doesn’t happen over a month or two”
and would have taken a year or more. The water would enter the house through the
double doors and the sidelights and would either run down the joists or just run
straight down, falling into the dining room. He then described the damage he had
observed in the dining room ceiling, and, when asked how long it would take for the
kind of damage he described to occur, he replied, “That would have to be residual. 
It could be as short as three months to five or ten years. Depends on how well it was
maintained.” He testified that a “sizeable leak” could have caused the damage in a
short amount of time, but that it was also possible that the damage occurred over a
period of years. He stated, “There is no way I could ever judge the specific date a
leak starts or to what date the deterioration had started. I couldn’t tell you that,” and
he agreed that damage from a condition that arose in one year could be identical to
damage that arose over seven years. When asked, “Do you have any basis for an
opinion to say, well, there had to have been water manifestation [in the dining room
ceiling] prior to June 2004?,” he responded, “No.”
          The Loeschers’ testimony indicates that they filled out the Seller’s Disclosure
Notice to the best of their knowledge of the condition of the property as of the date
they signed it, as required by the form. Although the Loeschers encountered a leak
problem in the dining room, their testimony indicates that it was confined to the area
surrounding the bay window, rather than in the area of Whitton’s leak. Ed Loescher
testified that the caulking in the balcony was in preparation for a paint job and the
repairs to the balcony were done in hopes that it would prevent further leaks in the
soffit area above the bay window. He further testified that it was impossible to see
the area where Whitton had had problems while working to repair the bay window
soffit where they had experienced a leak. His testimony also indicated that, after the
corrective measures were taken, they did not encounter any further leaks, which
prompted him to believe that the problem had been fixed and therefore did not need
to be disclosed in the notice. Regarding the roof repairs that were disclosed, Ed
Loescher testified that both roof replacements were prompted by leaks.
          The Loeschers’ expert witness, Michael Gray, a registered professional
structural engineer, testified that when someone purchases a house with an attached
balcony, periodic leaks should be expected but that there is no possible method from
which to predict the frequency of the leaks. He further testified that it is not
uncommon for a leak to occur without becoming visible and that when physical
damage does develop there is no means by which to date the damage. According to
Gray, the same is true for both galvanized steel damage and rotted wood; it is not
possible merely to look at the damage and to know how long it look to reach that
level of deterioration. Gray also testified that if a home owner had repaired a roof
leak two years prior to filling out the disclosure form he or she would not mark that
as “water penetration” on the form if no leaks had occurred since the repair because
the form referred to conditions that currently existed in the home.
          Whitton also introduced a 2001 invoice from the Loeschers’ contractor, Bob
Jackson, which indicated that the Loeschers were billed for a ceiling repair in the
dining room, in addition to repair work done on the “window wall,” in the soffit. 
Whitton alleges that the invoice is proof that the Loeschers experienced a leak in the
dining room similar to the current leak and that they failed to disclose that
information in the notice, knowing that the leak had not been fixed. The Loeschers
testified that they did not recall the specific work done by Jackson but that the ceiling
repair work mentioned on the invoice must have been in reference to the soffit.
          After two days of testimony, the trial court ruled in the Loeschers’ favor,
stating on the record:
          I find that there were certainly serious defects in the property. . . . 
The issue, however, is not whether there were problems. It is whether
those problems were known by the defendants at the time they sold the
house. I cannot conclude that the evidence is so lacking on this point
that it is groundless or that this suit was brought for harrassment, but I
am unable to find that the defendants had actual or constructive
knowledge of all of the defects in the house. It is clear that the plaintiff
had or is charged with some knowledge of the defects in the residence
he was purchasing, and had that knowledge prior to the time that he
closed on the property. He got that from engineers that he hired that he
had a professional relationship with. Frankly, the engineers were on
notice of the signs of the defects and chose not to look further into the
causes of those defects or of the staining or of other things, the dry rot
or the rotting in a portion of the house.
          That the plaintiff being aware of the symptoms didn’t instruct the
engineers to look further is no sign certainly of negligence on him, but
in my view bars him from claiming that the defendants had greater
knowledge of defects, which I was unable to find that they did. I will
therefore enter a take nothing judgment on the plaintiff’s cause of
action.
 
          Regarding attorney’s fees, the trial court pointed out that the Loeschers brought
two grounds for recovering their attorney’s fees: one “under the Civil Practice and
Remedies Code [on] the claim that this is a groundless and frivolous lawsuit” and
another claim as “the prevailing party in a legal proceeding relating to the contract.”
The trial court stated that he was “unable to find that [the suit was groundless and
frivolous] and I therefore rule for [Whitton] on that point.”


 The trial court deferred
ruling on the Loeschers’ second ground for obtaining attorney’s fees until he received
briefing from the parties on whether this was a lawsuit brought under the earnest
money contract.
          The Loeschers subsequently filed a motion for rendition of judgment and award
of attorney’s fees in their favor under Texas Civil Practice and Remedies Code
chapter 38, which Whitton contested. The trial court signed the judgment on March
19, 2008, ordering that Whitton “take nothing by his suit and that [the Loeschers]
recover court costs from [Whitton].” Regarding attorney’s fees, the final judgment
stated that the Loeschers “requested attorney’s fees based on Texas Civil Practice &
Remedies Code Chapter 38. [The Loeschers] offered evidence at trial, to which
[Whitton] stipulated, proving reasonable and necessary attorney’s fees in the amount
of $30,400.00, and judgment is entered in that amount.” This appeal followed.
Sufficiency of Trial Court’s Findings
          In his second issue on appeal, Whitton argues that the trial court erred in
finding that the Loeschers made no misrepresentations. In his third issue, he
challenges the trial court’s finding that he was “barred” from relying on the
Loeschers’ seller’s disclosure form. In his fourth issue, Whitton argues that the trial
court erred in not finding in his favor on his causes of action. We construe these
arguments as challenges to the factual sufficiency of the evidence supporting the trial
court’s judgment.
          In a case tried to the bench, an appellant may challenge the legal and factual
sufficiency of the evidence without preserving error in the trial court. Tex. R. App.
P. 33.1(d). “When a trial court does not issue findings of fact and conclusions of law
with its judgment, all facts necessary to support the judgment and supported by the
evidence are implied.”


 BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789,
795 (Tex. 2002) (citing Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990)). 
“When the appellate record includes the reporter’s and clerk’s records, these implied
findings are not conclusive and may be challenged for legal and factual sufficiency.” 
Id. We apply the same standard of review as that applied in the review of jury
findings. Roberson v. Roberson, 768 S.W.2d 280, 281 (Tex. 1989).
          In a factual sufficiency challenge, we examine the entire record and consider
the evidence both in favor of and contrary to the challenged finding. Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence,
we set aside the fact finding only if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 406–07 (Tex. 1998). We may not pass upon the witnesses’ credibility
or substitute our judgment for that of the fact-finder, even if the evidence would
clearly support a different result. Id. at 407. “The amount of evidence necessary to
affirm a judgment is far less than that necessary to reverse a judgment.” GTE
Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).
A.      Finding of No Misrepresentation
          The court impliedly had to find that the Loeschers did not make a
misrepresentation regarding the condition of the dining room ceiling and the leaks in
that area in order to enter a take-nothing judgment in their favor. See BMC Software,
83 S.W.3d at 795.
          In his second issue, Whitton argues that the trial court erred in finding that the
Loeschers made no misrepresentations. Whitton argues that the testimony of his
expert witnesses regarding the nature of the leak in the dining room ceiling and the
invoice from Bob Jackson for repairs to the dining room window and ceiling indicate
that the Loeschers should have reported the leak on their disclosure form addressing
roof repairs and water penetration. He also argues that the Loeschers’ testimony
lacked credibility because their testimony showed that other leaks had occurred in the
home that the Loeschers did not report on the disclosure notice. 
          However, the expert testimony at trial indicated that the Loeschers were only
asked to report current conditions of water penetration, not past conditions that had
been repaired. All three experts testified that they could not determine how long the
particular leak Whitton is complaining of had been occurring or whether the
Loeschers would have been aware of it. The Loeschers themselves testified that they
were not aware of any problems in the dining room other than the soffit area leak that
was repaired by Jackson. The trial court was the sole judge of the credibility of the
witnesses and the weight to be given their testimony. See Maritime Overseas Corp.,
971 S.W.2d at 407. Considering all of the evidence, we conclude that the trial court’s
implied finding that the Loeschers did not make a misrepresentation was not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. See id. at 406–07.
          We overrule Whitton’s second issue.
B.      Finding That Whitton Was “Barred” From Relying on Loescher’s
Statements

          In his third issue, Whitton argues that the trial court erred in finding that he was
“barred” from relying on the Loeschers’ statements as a producing cause of his
damages. In his fourth issue, Whitton argues that the trial court erred “in not finding
in [his favor] on his causes of action.” Specifically, Whitton argues that the trial
court should have found in his favor on his causes of action for “failure to disclose
material facts, false disclosures, statutory fraud, common law fraud, and violation of
the Texas [D]eceptive [T]rade [P]ractices [A]ct section 17.46(b)(5), (23).”
          However, our holding that the evidence was factually sufficient to support the
trial court’s implied finding that the Loeschers made no misrepresentation renders
these issues moot. If the Loeschers did not make a misrepresentation, Whitton could
not, as a matter of law, have relied on it, nor could he have prevailed on any of the
causes of action alleged, all of which required some form of misrepresentation. See,
e.g., Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2009) (providing that false
representation is required to establish cause of action for statutory fraud), id. § 17.46
(requiring that defendant engaged in false, misleading, or deceptive act or practice to
recover under Deceptive Trade Practices Act); Formosa Plastics Corp. v. Presidio
Eng’rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998) (holding that material,
false representation by defendant is element of fraud); see also Wells v. Wells, 251
S.W.3d 834, 842–43 (Tex. App.—Eastland 2008, no pet.) (“[T]he trial court’s
statements at the end of trial do not constitute findings of fact . . . [and do not] excuse
us from our obligation to affirm the trial court on any basis supported by the
record.”).
          We overrule Whitton’s third and fourth issues.
Attorney’s Fees
          In his first issue, Whitton complains that the trial court erred in awarding
attorney’s fees to the Loeschers. Specifically, Whitton argues that the trial court’s
award of attorney’s fees under Chapter 38 of the Texas Civil Practice and Remedies
Code was improper. The Loeschers sought attorney’s fees under Civil Practice and
Remedies Code section 38.001. Section 38.001 provides, “A person may recover
reasonable attorney’s fees from an individual or corporation, in addition to the
amount of a valid claim and costs, if the claim is for . . . an oral or written contract.” 
Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). “To recover
attorney’s fees under Section 38.001, a party must (1) prevail on a cause of action for
which attorney’s fees are recoverable, and (2) recover damages.” Green Int’l, Inc. v.
Solis, 951 S.W.2d 384, 390 (Tex. 1997). The Civil Practice and Remedies Code
“does not provide for the recovery of attorney’s fees by a defendant who only defends
against a plaintiff’s claim and presents no claim of his own.” Thottumkal v.
McDougal, 251 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2008, pet.
denied) (citing Am. Airlines, Inc. v. Swest, Inc., 707 S.W.2d 545, 547 (Tex. 1986)
(holding defendant could not recover attorney’s fees under predecessor to Section
38.001 when defendant presents no valid contract claim of its own)). Although the
trial court found in favor of the Loeschers in awarding a take-nothing judgment, the
Loeschers did not counterclaim for a breach of contract, nor did they recover any
damages. Therefore, they are not entitled to recover attorney’s fees under section
38.001. See id.
          However, the Loeschers also sought attorney’s fees under the provisions of the
earnest money contract. That contract provided, “The prevailing party in any legal
proceeding related to this contract is entitled to recover reasonable attorney’s fees and
all costs of such proceeding incurred by the prevailing party.” Here, Whitton’s suit
is “related to” the earnest money contract because his claims focused on
misrepresentations in the seller’s disclosure, which had been expressly incorporated
as part of the earnest money contract. Thus, the Loeschers were entitled to recover
their “reasonable attorney’s fees and all costs” incurred in defending against
Whitton’s suit under the provisions of the earnest money contract. See Dickerson v.
Trinity-Western Title Co., 985 S.W.2d 687, 692 (Tex. App.—Fort Worth 1999, pet.
denied) (awarding attorney’s fees to prevailing party for suit filed after closing when
earnest money contract provided for award of attorney’s fees to “‘a prevailing party
in any legal proceeding brought under or with relation to’ the contract”). When no
findings of fact or conclusions of law are properly requested or provided by the trial
court, the trial court’s judgment will be upheld on any legal theory supported by the
facts and the pleadings. See In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984); Love v.
State Bar of Texas, 982 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 1998, no
pet.); First Trust Corp. TTEE FBO v. Edwards, 172 S.W.3d 230, 241 (Tex.
App.—Dallas 2005, pet. denied). We hold that the award of attorney’s fees was
proper.
          We overrule Whitton’s first issue.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Sharp, and Massengale.