

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00300-CV
_____

E. FRIEDMAN & ASSOCIATES, INC.
AND ISAAC ELLIOT FRIEDMAN, APPELLANTS

V.

ABC HOTEL & RESTAURANT SUPPLY, INC., APPELLEE

_____

On Appeal from the 201st District Court
Travis County, Texas
Trial Court No. D-1GN-08-000584, Honorable John K. Dietz, Presiding

_____

June 26, 2013

OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

E. Friedman Associates, Inc., and Isaac Elliott Friedman[1] appeal the granting of a summary judgment in favor of ABC Hotel & Restaurant Supply, Inc., on its suit for breach of contract and on EFA's counterclaim for breach of contract. Additionally, EFA appeals the award of attorney's fees to ABC. By cross appeal, ABC appeals the denial

_____

[1] Appellants will be referred to as EFA unless specifically referring to Isaac Elliott Friedman when Elliott will be used.

of its request for additional attorney's fees and the calculation of post-judgment interest on the award. We will modify the judgment regarding post-judgment interest and affirm the trial court's judgment as modified.

Factual and Procedural Background

In 2006, Elliott was considering selling EFA and placed the company on the market through a broker for $1,200,000. Later that same year, EFA and ABC began negotiating the acquisition of EFA by ABC. The negotiations were extensive and lengthy. During the negotiation phase, the parties entered into a Letter of Intent on June 22, 2007. The Letter of Intent provided that ABC would pay $1,600,000 for the purchase of EFA's assets. Eventually, the price of the purchase increased and became a stock purchase agreement (SPA) instead of an asset purchase agreement. From the date the Letter of Intent was signed until execution of the SPA, ABC was engaged in completion of its due diligence review of the operations of EFA.

EFA and ABC executed the SPA on December 31, 2007. The agreement provided that ABC was to acquire all of the stock of EFA and Elliott was to receive payments totaling $3,805,000, in the form of a $178,000 deposit at the execution of the SPA, $1,602,000 at closing, $1,200,000 in the form of a note payable in forty-two monthly installments, and $825,000 payable over forty-two months. The SPA provided that closing of the transaction would occur "on or about January 31, 2008, or as soon thereafter as practical, but in no event later than February 15, 2008."

The SPA contained a number of conditions regarding the actions of the parties prior to and at closing. For purposes of this opinion, two of the conditions need to be

set forth. First, section 1.2, "Assets retained by Seller," provided, among other things, that, "The Company shall not make any payments to Seller after December 31, 2007, and prior to Closing, as salary, compensation, dividend or otherwise, except as expressly permitted by this Agreement or the Transactions." Next, section 1.6, "Obligations of the Parties at Closing," provided, among other things, that, "At closing the Buyer shall deliver to Seller: (iii) a security agreement executed by Buyer in the form attached hereto as Exhibit B." The exhibit referred to contains, within paragraph C.2., the following language:

> The lien created by this instrument shall be and remain secondary and inferior to any and all lien(s) securing the payment of that one certain $1,500,000 Line of Credit Note in favor of JPMorgan Chase Bank, as well as any and all future modifications, extensions, amendments of such note, as well as any additional loans, notes, or other indebtedness provided to any of the Pledgors by JPMorgan Chase Bank or any successor or replacement lender ("Primary Lender") to the Pledgors (the Primary Obligations'); provided that the total principal Indebtedness under such Primary Obligations does not Exceed Two Million Three Hundred Thousand Dollars ($2,300,000.00). Secured Party acknowledges that the Security interests granted hereunder are subject to the Provision of all liens and security interests granted to JPMorgan Chase Bank or any successor lender with Respect to the Primary Obligations.

In late January 2008, ABC's principal member, Mark Jansen, went to New York City to close the purchase. Prior to going to New York City, JPMorgan Chase provided Jansen with the terms of a subordination agreement that the bank required. When EFA was presented with the subordination agreement, they refused to execute it. What followed were attempts by ABC to restructure the purchase to eliminate the need for the subordination agreement. However, all efforts at restructuring the agreement were unsuccessful. Finally, when it became apparent that EFA was not going to close the

transaction, ABC issued a termination notice on February 17, 2008. Subsequently, on February 20, 2008, EFA also issued a counter-termination notice.

ABC requested return of the $178,000 deposit but EFA refused to return the same. ABC filed suit for breach of contract. EFA answered and filed a counterclaim alleging ABC breached the contract first and was guilty of fraud. After an adequate time for discovery, ABC filed a traditional and no-evidence motion for summary judgment as to EFA's counterclaim. EFA responded by filing a response to ABC's motion for summary judgment. The trial court granted ABC's motion for summary judgment against all of EFA's counterclaims.[2] ABC then moved for an award of attorney's fees and, in July 2010, the trial court granted ABC's motion and awarded it $150,000 in attorney's fees. Subsequently, EFA refused to agree to the entry of a final judgment. ABC filed a motion for clarification and, in the alternative, a second motion for summary judgment. Thereafter, the trial court indicated that it intended to grant ABC's second motion for summary judgment. ABC then filed a motion for supplemental attorney's fees. EFA nonsuited its claims for fraud against ABC. The trial court entered a final summary judgment against EFA and Elliott in May 2012. In the final summary judgment, the trial court found that EFA committed three material breaches of the SPA. The trial court found that EFA 1) failed to deliver reviewed financial information within the required ten day period prior to closing, 2) failed to segregate funds for proper distribution after closing, and 3) made unauthorized payments to Elliott after entry of the SPA. The final summary judgment incorporated the previous award of attorney's fees but denied ABC's request for additional attorney's fees.

---

[2] ABC's first motion only attacked the counterclaim filed by EFA and did not seek summary judgment on ABC's claims for affirmative relief.

4

Both parties have appealed. EFA contends that, 1) the granting of a summary judgment in favor of ABC was error, 2) granting the summary judgment as to its breach of contract counterclaim against ABC was error, and 3) the award of attorney's fees in favor of ABC was in error. ABC contends that the trial court erred in refusing to grant additional attorney's fees and in the assessment of post-judgment interest. We will affirm the trial court's judgment with a modification as to post-judgment interest.

Standard of Review for Summary Judgments

Appellate courts review the granting of a motion for summary judgment *de novo.* See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When a movant files a no-evidence motion in proper form under Rule of Civil Procedure 166a(i), the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises an issue of material fact regarding the elements challenged by the motion. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). In other words, the nonmovant must respond to a no-evidence motion by presenting more than a scintilla of probative evidence on each challenged element. See King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); DR Partners v. Floyd, 228 S.W.3d 493, 497 (Tex.App.--Texarkana 2007, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). The movant in a traditional motion for summary judgment, filed pursuant to rule 166a(c), has the burden of showing that no genuine issue of material fact exists and that it is entitled to a summary judgment as a matter of law. See Am. Tobacco Co.

5

v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). The trial court must indulge every reasonable inference in favor of the nonmovant and resolve all doubts in his favor. Id.

Applicable Law

It is axiomatic in a breach of contract case that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). However, the release of the other party from fulfilling its obligations only comes about if the initial breaching party's breach is material. Id. at 198. One of the considerations in determining whether a breach is material is the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance. See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co., 288 S.W.3d 374, 378 (Tex. 2009) (citing Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994), and RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981)).

Waiver is considered an affirmative defense. See TEX. R. CIV. P. 94. In order for a party to avail itself of this defense, the defense must be affirmatively pled or tried by consent. See Compass Bank v. MFP Fin. Servs., 152 S.W.3d 844, 851 (Tex.App.— Dallas 2005, pet. denied). Waiver is defined as the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. In re Gen. Elec. Capital Corp., 203 S.W.3d 314, 316 (Tex. 2006).

Analysis

First Breach

Initially, we take up EFA's contention that the evidence raised a fact question as to whether ABC's request that EFA sign the subordination agreement was a prior material breach of the contract. Under EFA's theory of the case, if ABC's action was a prior material breach or if the evidence raises that issue, then the granting of ABC's summary judgment was in error.

However, EFA's theory is in error for two reasons. First, the record establishes that EFA was notified about the specifics of the requested subordination agreement on February 1, 2008. The summary judgment record reflects that EFA made distributions to Elliott totaling $482,044 during January of 2008. Section 1.2 of the SPA restricted the right of EFA to make payments to Elliott after December 31, 2007. The trial court found that the action of EFA making the distributions to Elliott was a breach of the SPA. The summary judgment evidence supports that finding and fails to raise any material issue of fact contrary to that finding. Accordingly, because we will find EFA's breach material, ABC was discharged or excused from further performance. See Mustang Pipeline Co., 134 S.W.3d at 196.

Second, the terms of the SPA, by reference to the "Security Agreement" attached as Exhibit B to the SPA, reflect that Elliott's lien was secondary and inferior to the lien held by JPMorgan Chase Bank. Implicit in that statement is the fact that there will be executed some sort of subordination agreement. Specifically, the "Security Agreement" provides,

7

> The lien created by this instrument shall be and remain secondary and inferior to any and all lien(s) securing the payment of that one certain $1,500,000 Line of Credit Note in favor of JPMorgan Chase Bank. . . .

EFA never denies the existence of this language but rather posits that the subordination agreement breaches section 2.3(b) of the SPA. Specifically, EFA points the Court to the following language: "Buyer will not (b) require any consent, approval, notification, waiver or other similar action (a '*Consent')* or organizational document to which Buyer is a party or by which it is bound." From this language, EFA arrives at the conclusion that the subordination agreement means ABC required additional consent and thereby breached the SPA. Nowhere in the briefing of EFA nor in its response to ABC's summary judgment do we find any authority for the proposition that a lender's requirement to subordinate a lien issued in addition to the seller's purchase money lien is equated to the requirement of additional consent, as discussed in section 2.3(b) of the SPA. All we have supporting that proposition is EFA's contention.

However, assuming *arguendo* that the request for a subordination agreement was a breach, the record reflects the payments to Elliott occurred prior to any breach by ABC, and, therefore, when EFA was asked to sign a subordination agreement, it had already breached the contract. The summary judgment record reflects that ABC did not breach the SPA first, and, because we will find EFA's breach material, was discharged or excused from further performance. Id.

EFA argues that there is no proof that the monies paid to Elliot would have gone to ABC. That argument ignores the fact that the language of section 1.2 of the SPA contains no such exception to the bar against such distributions, and is an attempt to require ABC to prove an element not required by the terms of the SPA.

8

Material Breach

Of course, ABC will only be discharged or excused from further performance if the prior breach by EFA is a material breach. Id. at 198. To ascertain whether the breach by EFA is a material breach, we are called upon to examine the record to determine the extent to which ABC would be deprived of the benefit that it could have reasonably anticipated from full performance. See Prodigy Commc'ns Corp., 288 S.W.3d at 378. ABC contracted for a restriction upon the right of EFA to make any distributions to Elliott after December 31, 2007, the date the SPA was signed. In spite of this language, EFA made the following distributions to Elliott:

1) January 14, 2008: $250,000.00,

2) January 17, 2008: $90,956.00,

3) January 22, 2008: $126,088.00,

4) January 22, 2008: $15,000.00.

The total of these distributions was $482,044, or approximately 12.67% of the total bargain. We find that such a breach deprived ABC of a significant benefit it reasonably anticipated receiving from full performance of the contract. See id. Therefore, we hold that EFA's breach was material. See Mustang Pipeline Co., 134 S.W.3d at 198.

Waiver

We now turn to EFA's contention that ABC waived the condition that EFA not make distributions in contravention of section 1.2 of the SPA. EFA contends that the actions of ABC in trying to resuscitate the purchase of the stock after EFA had refused to sign the subordination agreement waived ABC's right to performance of the anti-

distribution condition. However, the only citation offered to support the position of EFA is Herbert Acquisitions, LLC v. Tremur Consulting Contractors, Inc., a memorandum opinion from our sister court in Austin. See No. 03-09-00385-CV, 2011 Tex. App. LEXIS 866 (Tex.App.—Austin Feb. 4, 2011, no pet.). However, Herbert discussed the extensive amount of due diligence that the purchaser had undertaken prior to the closing of the transaction, and whether the purchaser's actions waived the requirement that the seller provide GAAP[3] compliant financial statements. Id. at *14. The discussion in Herbert provides little or no guidance for this Court regarding the payment of funds from EFA to Elliott in contravention of section 1.2 of the SPA. We do not find the actions of ABC in trying to salvage the purchase by restructuring the offer to an all-cash offer to reflect an actual intent to relinquish its right to the moneys paid to Elliott. See Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex. 2008).

Further, ABC posits that EFA failed to plead waiver as required by Rule 94 of the Texas Rules of Civil Procedure. Tex. R. Civ. P. 94. Rule 94 provides that, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . waiver, and any other matter constituting an avoidance or affirmative defense." Id. Our review of the record reflects that waiver, as an affirmative defense, was never pled by EFA. However, EFA contends that, under the Texas Supreme Court holding in Roark v. Stallworth Oil & Gas, Inc., it could still raise waiver in response to ABC's motions for summary judgment. See 813 S.W.2d 492, 494 (Tex. 1991) (an unpleaded affirmative defense may also serve as a basis for summary judgment when it is raised in the summary judgment motion). The problem with EFA's contention is that a review of its responses to the motions for

---

[3] GAAP-Generally Accepted Accounting Procedures.

summary judgment filed by ABC reflect that waiver, as an affirmative defense, was not raised in either its response to ABC's original motion for summary judgment or to ABC's subsequent alternative motion for summary judgment contained in its motion to clarify the trial court's original summary judgment. The only place EFA raises the affirmative defense of waiver is in its briefs. Accordingly, EFA may not rely on the affirmative defense of waiver. TEX. R. CIV. P. 94.

When we view the summary judgment evidence in the light most favorable to the nonmovant, as we must in considering ABC's traditional motion for summary judgment, we find no material issue of fact as to EFA's breach of the SPA. See Am. Tobacco Co., 951 S.W.2d at 425. This is because we find that EFA committed the first material breach of contract and that EFA failed to properly raise the affirmative defense of waiver. We therefore overrule EFA's issue regarding the impropriety of the trial court's summary judgment pursuant to ABC's traditional motion for summary judgment. Because we have sustained the trial court's granting of summary judgment due to EFA's breach of the contract by making distributions to Elliott after the signing of the SPA, we do not reach the other grounds relied upon by the trial court in granting the summary judgment. See TEX. R. APP. P. 47.1.

EFA's Counterclaim for Breach of Contract

EFA next contends that we must reverse the trial court's decision granting ABC's summary judgment on EFA's counterclaim for breach of contract. Originally, EFA's counterclaim also included a claim for fraud. EFA is not appealing the trial court's ruling on its fraud claim. EFA's counterclaim for breach of contract is centered upon the

premise that ABC first breached the contract when the subordination agreement was presented to EFA. We have addressed that issue earlier in this opinion. We remain convinced that ABC did not commit the first material breach of contract. As pointed out earlier, the first material breach is attributable to EFA and, accordingly, ABC was discharged or excused from further performance under the contract. See Mustang Pipeline Co., 134 S.W.3d at 196. Likewise, we have already ruled that the breach by EFA was a material breach. Prodigy Commc'ns Corp., 288 S.W.3d at 378. Accordingly, EFA's issue regarding the trial court's granting of summary judgment on its counterclaim for breach of contract is overruled.

ABC's Attorney's Fees

EFA's last issue contends that we must reverse the trial court's decision to grant attorney's fees to ABC. ABC was originally granted attorney's fees after the trial court granted its first motion for summary judgment. However, the first motion for summary judgment only encompassed EFA's counterclaims for fraud and breach of contract. Subsequently, ABC filed a motion for clarification or, in the alternative, a second motion for summary judgment on its claims for breach of contract. The trial court granted that motion for summary judgment. In its order granting the summary judgment, the trial court concluded that it should grant the request for attorney's fees entered earlier and incorporated the previous order as if set forth fully. It is EFA's position that such was error because the original summary judgment only encompassed its counterclaims. EFA posits that this was error because ABC was not entitled to attorney's fees for defending a counterclaim. To support this proposition, EFA cites the Court to Texas Civil Practice & Remedies Code section 38.001, and Am. Airlines, Inc. v. Swest, Inc.,

707 S.W.2d 545 (Tex. 1986). Section 38.001 provides that attorney's fees are recoverable in suits for recovery under a contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). Am. Airlines held that, since American Airlines did not present a claim against Swest, it was not entitled to attorney's fees for simply defending against Swest's suit against it. Am. Airlines, Inc., 707 S.W.2d at 547. According to EFA's position, since the original summary judgment went only to the counterclaims, the action of the trial court in awarding attorney's fees based upon the prior summary judgment was in error because no attorney's fees were allowable.

The standard of review that we must use in addressing this issue is an abuse of discretion standard. Aaron Rents, Inc. v. Travis Cent. Appraisal Dist., 212 S.W.3d 665, 671 (Tex.App.—Austin 2006, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. Id.

We disagree with EFA's characterization of the facts before us. First, the trial court's final summary judgment did, in fact, dispose of all claims, including ABC's action for breach of contract. Second, the counterclaims presented by EFA were based on the same operative facts that the trial court ultimately used to grant the final summary judgment. This is important because it reflects that, in the hearing on attorney's fees conducted following the summary judgment on the counterclaims, the trial court heard the same evidence regarding reasonableness and necessity for attorney's fees that would have led to the award of attorney's fees following the final summary judgment. By incorporating the original order for attorney's fees, the trial court was simply acknowledging that set of circumstances. This becomes important when we reflect that EFA is not contesting the evidentiary sufficiency of the award. In the final analysis, the

trial court's final summary judgment ordered that ABC recover attorney's fees based upon the grant of the final summary judgment. The incorporation by reference language goes to the evidentiary support for the amount of the award. Therefore, we have a situation where ABC was the successful litigant in a suit for breach of contract and the trial court awarded attorney's fees. This award is authorized under the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). Accordingly, the trial court did not abuse its discretion. Aaron Rents, Inc., 212 S.W.3d at 671. EFA's issue regarding the award of attorney's fees is overruled.

ABC's Cross Appeal

ABC brings two issues before the Court in its cross appeal. First, ABC contends the trial court erred when it refused to award ABC additional attorney's fees in the final summary judgment order. Second, ABC contends that the trial court's final summary judgment is erroneous because it limited post-judgment interest to the compensatory damages award of $356,000, as opposed to including the award of attorney's fees, court costs, and pre-judgment interest in that calculation. We will affirm the trial court's order denying additional attorney's fees, and reform the judgment to reflect post-judgment interest on all amounts awarded by the trial court's summary judgment.

Additional Attorney's Fees

We have previously identified the standard of review for an award of attorney's fees. We note that ABC couches its arguments for additional attorney's fees by contending that, as a matter of law, the trial court erred in refusing additional attorney's fees, or that as an equitable matter, ABC was entitled to additional attorney's fees. As

such, we construe the argument to mean that the trial court abused its discretion by not awarding additional attorney's fees. This is problematic because the trial court did, in fact, award $150,000 in attorney's fees. Remembering that the award of attorney's fees in a successful prosecution of a breach of contract case is governed by the Texas Civil Practice & Remedies Code, the trial court did not abuse its discretion by awarding attorney's fees to ABC; it is only the amount of the attorney's fees that are an issue. See TEX. CIV. PRAC. & REM CODE ANN. § 38.001(8). Yet, nothing in ABC's brief attacks the evidentiary support for the award. Thus, we are left with the factfinder, the trial court, arriving at an amount of attorney's fees it deemed proper. We cannot say that the trial court erred, either in the exercise of its discretion regarding the award of attorney's fees nor in the amount of such fees. See Smith v. Patrick W. Y. Tam Trust, 296 S.W.3d 545, 547 (Tex. 2009). Accordingly, we overrule ABC's first cross appeal issue.

Post-Judgment Interest

The trial court's final summary judgment awarded post-judgment interest on the award of compensatory damages of $356,000. ABC's cross appeal alleges that the post-judgment interest should be awarded on the entire amount found in the summary judgment award, including attorney's fees, court costs, and pre-judgment interest. EFA has conceded this issue in its reply brief to the cross-appeal. ABC's position is well taken and we will modify the judgment to provide for post-judgment interest in the amount found by the trial court, 5%, to apply to the entire judgment awarded by the trial court. Dallas Cnty. v. Crestview Corner Car Wash, 370 S.W.3d 25, 50 (Tex.App.—Dallas, no pet.).

15

Conclusion

The trial court's granting of summary judgment against EFA is modified to award post-judgment interest of 5% on the compensatory damages of $356,000, attorney's fees, costs of court, and pre-judgment interest.  As modified, the trial court's summary judgment is affirmed.

Mackey K. Hancock
Justice
